**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

# VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT (17 U.S.C. § 501), REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202), DEFAMATION PER SE, FALSE LIGHT, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND CIVIL CONSPIRACY

**CASE NO.:** Unassigned
**JUDGE:** Unassigned
**DOC ID:** 0914-JES-V-FOX-COMP-2026
**DATE:** September 14, 2026

Case: **2:26–cv–00852**
Assigned To : **Romero, Cecilia M.**
Assign. Date : **9/14/2026**
Description: **Sullivan v. Fox News Network et al**

**JOHN EARLE SULLIVAN**,
*Plaintiff,*

v.

**FOX NEWS NETWORK, LLC**,
*d/b/a FOX NEWS CHANNEL (Defendant);*

and

**FOX CORPORATION**,
*(Defendant);*

and

**PORTER BERRY**,
*in his individual and corporate capacity (Defendant);*

and

**SHANNON BREAM**,
*in her individual and corporate capacity (Defendant);*

and

**KEVIN CORKE**,
*in his individual and corporate capacity (Defendant);*

and

**SEAN HANNITY**,
*in his individual and corporate capacity (Defendant);*

and

**TUCKER CARLSON**,
*in his individual and corporate capacity (Defendant);*

and

**DANIELLE WALLACE**,
*in her individual and corporate capacity (Defendant);*

and

**MICHAEL RUIZ**,
*in his individual and corporate capacity (Defendant);*

and

**LAURA INGRAHAM**,
*in her individual and corporate capacity (Defendant);*

and

**YAEL HALON**,
*in her individual and corporate capacity (Defendant);*

and

**JOHN ROBERTS**,
*in his individual and corporate capacity (Defendant),*
*Defendants.*

**ORIGINAL CIVIL ACTION & DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS


**TABLE OF AUTHORITIES** ... **3**
PRELIMINARY STATEMENT & STATUTORY COMPLIANCE RECITAL ... 5
INTRODUCTION ... 8
THE PARTIES ... 10
JURISDICTION AND VENUE ... 15
FACTUAL BACKGROUND ... 17
PLAINTIFF'S JOURNALISTIC WORK AND THE COPYRIGHTED FOOTAGE ... 17
DEFENDANTS' UNAUTHORIZED AND WILLFUL USE OF THE COPYRIGHTED FOOTAGE ... 19
FOX NATION 'PATRIOT PURGE' COMMERCIAL PAYWALL EXPLOITATION & DEFAMATION ... 21
DEFENDANTS' COORDINATED TELEVISION AND DIGITAL DEFAMATORY CAMPAIGN ... 24
FOX NEWS X (TWITTER) MULTI-WAVE SOCIAL MEDIA DEFAMATION BLITZ ... 29
ACTUAL MALICE AND RECKLESS DISREGARD FOR THE TRUTH ... 30
PLAINTIFF'S COMPLETE LEGAL EXONERATION AND VACATUR OF CONVICTIONS ... 32
CONTINUOUS DIGITAL DISTRIBUTION AND POST-REGISTRATION INFRINGEMENT ... 33
DEFENDANTS' COMMERCIAL EXPLOITATION, MARKET HARM, AND USURPATION OF LICENSING REVENUES ... 34
WILLFUL POST-REGISTRATION INFRINGEMENT AND STATUTORY REMEDIES (17 U.S.C. §§ 504, 505) ... 36
DEFAMATION PER SE, PRESUMED HARM, AND CONSTITUTIONAL ACTUAL MALICE ... 37
CLAIMS FOR RELIEF ... 40
COUNT I: DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501) — LINEAR BROADCAST & PAYWALL STREAMING ... 40
(AGAINST DEFENDANTS FOX NEWS NETWORK, LLC, FOX CORPORATION, TUCKER CARLSON, PORTER BERRY, AND JOHN ROBERTS) ... 40
COUNT II: DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501) — DIGITAL ARTICLES, VIDEO HOSTING & THUMBNAILS ... 43
(AGAINST DEFENDANTS FOX NEWS NETWORK, LLC, FOX CORPORATION, PORTER BERRY, DANIELLE WALLACE, AND MICHAEL RUIZ) ... 43
COUNT III: REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202(B), 1203) ... 45
(AGAINST DEFENDANTS FOX NEWS NETWORK, LLC, FOX CORPORATION, JOHN ROBERTS, AND PORTER BERRY) ... 45
COUNT IV: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT (17 U.S.C. § 501) ... 47
(AGAINST DEFENDANTS FOX CORPORATION AND PORTER BERRY) ... 47
COUNT V: DEFAMATION PER SE — IMPUTATION OF VIOLENT FELONY CONDUCT (UTAH COMMON LAW) ... 49
COUNT VI: DEFAMATION PER SE — IMPEACHMENT OF PROFESSIONAL INTEGRITY & TRADE FITNESS (UTAH COMMON LAW) ... 51
COUNT VII: FALSE LIGHT INVASION OF PRIVACY (UTAH COMMON LAW) ... 53
COUNT VIII: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (UTAH COMMON LAW / ELDRIDGE V. JOHNDROW) ... 55
(AGAINST ALL DEFENDANTS) ... 57
COUNT IX: CIVIL CONSPIRACY (UTAH COMMON LAW / RESTATEMENT (SECOND) OF TORTS § 876) ... 57
**PRAYER FOR RELIEF** ... **59**
SWORN VERIFICATION & STATUTORY DECLARATION UNDER 28 U.S.C. § 1746 ... 62
**CERTIFICATE OF SERVICE** ... **63**
**ADDENDUMS** ... **65**
**INDEX OF APPENDED ENCLOSURES** ... **72**

# TABLE OF AUTHORITIES

## Constitutional Provisions

1. U.S. Const. amend. I . . . 17, 38
2. U.S. Const. amend. XIV, § 1 . . . 38, 39
3. 17 U.S.C. § 101 . . . 15
4. 17 U.S.C. § 106 . . . 6, 19, 40, 41, 43, 47
5. 17 U.S.C. § 410 . . . 18, 40, 41
6. 17 U.S.C. § 412 . . . 36, 46
7. 17 U.S.C. § 501 . . . 5, 6, 41, 47, 59, 63
8. 17 U.S.C. § 504 . . . 20, 36, 37, 41, 42, 43, 44, 48, 59
9. 17 U.S.C. § 505 . . . 37, 42, 43, 44, 48, 60
10. 17 U.S.C. § 1202 . . . 5, 6, 45, 46, 56, 59, 63
11. 17 U.S.C. § 1203 . . . 46, 47, 48, 59, 60
12. 28 U.S.C. § 1331 . . . 15
13. 28 U.S.C. § 1338(a) . . . 15
14. 28 U.S.C. § 1367(a) . . . 15
15. 28 U.S.C. § 1391(b)(2) . . . 16
16. 28 U.S.C. § 1746 . . . 62, 63

## Judicial Precedents and Case Law

1. *Calder v. Jones, 465 U.S. 783 (1984)* . . . 16, 17
2. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063 (10th Cir. 2008)* . . . 16
3. *Eldridge v. Johndrow, 2015 UT 21, 345 P.3d 553* . . . 6, 7, 55, 56
4. *Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 341 (1991)* . . . 34, 40
5. *Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259 (9th Cir. 1996)* . . . 47, 48, 56, 57
6. *Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)* . . . 38, 50, 51
7. *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533 (10th Cir. 1996)* . . . 47, 48, 56, 57
8. *Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985)* . . . 9, 10, 12, 20, 21, 22, 23, 24, 33, 34, 35, 36, 39, 41, 42, 47, 48, 58
9. *Jacob v. Bezzant, 2009 UT 37, 212 P.3d 535* . . . 37, 38, 50, 52
10. *Mango v. BuzzFeed, Inc., 970 F.3d 167 (2d Cir. 2020)* . . . 46
11. *Mathews v. McCown, 2025 UT 34* . . . 37, 38, 39, 50, 53, 54
12. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005)* . . . 47, 48
13. *New York Times Co. v. Sullivan, 376 U.S. 254 (1964)* . . . 10, 11, 12, 13, 14, 30, 31, 38, 39, 40, 50, 51, 52, 63, 64
14. *Russell v. Standard Corp., 898 P.2d 263 (Utah 1995)* . . . 37, 38, 40, 50, 52
15. *Seegmiller v. KSL, Inc., 626 P.2d 968 (Utah 1981)* . . . 38, 40
16. *St. Amant v. Thompson, 390 U.S. 727 (1968)* . . . 30, 31, 39, 40, 50, 51
17. *West v. Thomson Newspapers, 872 P.2d 999 (Utah 1994)* . . . 53, 54, 55

**John Earle Sullivan**
1221 West Erda Way
Erda, UT 84074
**Phone:** 435-841-7258
**Email:** johne.sullivan@outlook.com
*Plaintiff Pro Se*

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

| | |
|---|---|
| **JOHN EARLE SULLIVAN,**<br>*Plaintiff,*<br>**v.**<br>**FOX NEWS NETWORK, LLC,**<br>*d/b/a FOX NEWS CHANNEL (Defendant);*<br>*and*<br>**FOX CORPORATION,**<br>*Defendant;*<br>*and*<br>**PORTER BERRY; KEVIN CORKE; SEAN HANNITY; TUCKER CARLSON; MICHAEL RUIZ; and JOHN ROBERTS,**<br>*each in his individual and corporate capacity (Defendants);*<br>*and*<br>**SHANNON BREAM; DANIELLE WALLACE; LAURA INGRAHAM; and YAEL HALON,**<br>*each in her individual and corporate capacity (Defendants).* | **VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT (17 U.S.C. § 501), REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202), DEFAMATION PER SE, FALSE LIGHT, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND CIVIL CONSPIRACY**<br><br>**CASE NO.: Unassigned**<br><br>**JUDGE: Unassigned**<br><br>**DOC ID: 0914-JES-V-FOX-COMP-2026**<br><br>**DATE: SEPTEMBER 14, 2026**<br><br>**DEMAND FOR JURY TRIAL** |

**VERIFIED COMPLAINT FOR COPYRIGHT INFRINGEMENT (17 U.S.C. § 501), REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. § 1202), DEFAMATION PER SE, FALSE LIGHT, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, AND CIVIL CONSPIRACY**

## PRELIMINARY STATEMENT & STATUTORY COMPLIANCE RECITAL

Plaintiff John Earle Sullivan (*"Plaintiff"*), invoking the fundamental right of self-representation pursuant to 28 U.S.C. § 1654, initiates this verified civil action against Defendants Fox News Network, LLC, Fox Corporation, Porter Berry, Shannon Bream, Kevin Corke, Sean Hannity, Tucker Carlson, Danielle Wallace, Michael Ruiz, Laura

Ingraham, Yael Halon, and John Roberts (collectively, *"Defendants"*), commanding plenary legal, equitable, and declaratory relief across nine fortified causes of action for:

1. Direct Copyright Infringement of linear broadcast and paywalled subscription streaming assets pursuant to 17 U.S.C. §§ 106 and 501 (Count I);
2. Direct Copyright Infringement of digital news articles, video hosting platforms, and extracted video thumbnails pursuant to 17 U.S.C. §§ 106 and 501 (Count II);
3. Intentional Removal and Alteration of Copyright Management Information pursuant to 17 U.S.C. §§ 1202(b) and 1203 (Count III);
4. Contributory and Vicarious Copyright Infringement pursuant to 17 U.S.C. § 501 and governing common-law principles of secondary copyright liability (Count IV);
5. Common-Law Defamation Per Se arising from the malicious public imputation of infamous, violent felony crimes under Utah common law (Count V);
6. Common-Law Defamation Per Se arising from the malicious public impeachment of professional integrity, journalistic fitness, and trade competence under Utah common law (Count VI);
7. False Light Invasion of Privacy arising from the deliberate, highly offensive public distortion of Plaintiff's documentary covenants, identity, and visual likeness under Utah common law (Count VII);
8. Intentional Interference with Prospective Economic Advantage arising from the unlawful disruption of documentary licensing covenants and business relations through tortious and statutory improper means under Utah common law and *Eldridge v. Johndrow*[1], 2015 UT 21, 345 P.3d 553 (Count VIII); and

9. Civil Conspiracy arising from an unlawful concerted combination and meeting of the minds to execute intellectual property expropriation, character assassination, and commercial exploitation under Utah common law and the Restatement (Second) of Torts § 876 (Count IX).

In rigorous adherence to Federal Rule of Civil Procedure 11(b) and the judicial gatekeeping standards governing *in forma pauperis* proceedings codified at 28 U.S.C. § 1915(e)(2), Plaintiff certifies and solemnizes under penalty of perjury that this civil action:

1. **Proper Purpose & Subjective/Objective Good Faith (Fed. R. Civ. P. 11(b)(1)):** Is instituted in immaculate good faith to vindicate substantive federal intellectual property rights and secure redress for catastrophic common-law injuries, and is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
2. **Non-Frivolous Statutory & Jurisprudential Claims (28 U.S.C. § 1915(e)(2)(B)(i)-(ii)):** Asserts cognizable, rigorously researched claims for relief unassailably grounded in federal statutory enactments, state common law, and binding Supreme Court and Tenth Circuit precedents;
3. **Plausible Factual Averments (*Twombly* / *Iqbal*):** Alleges concrete, particularized, and empirically verifiable factual averments satisfying the plausibility threshold demarcated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); and

[1] Eldridge v. Johndrow, 2015 UT 21, at ¶ 70 (2015): '(1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations;'.

4. **Non-Immune Commercial Actors and Media Operatives (28 U.S.C. § 1915(e)(2)(B)(iii)):** Proceeds strictly against private commercial broadcast enterprises, corporate parents, digital publishing executives, and individual media commentators who possess zero sovereign, judicial, prosecutorial, or qualified immunity from monetary damages, statutory penalties, or permanent injunctive decrees.

## INTRODUCTION

This civil action arises from Defendants' institutional orchestration of intellectual property piracy, uncompensated commercial exploitation, and calculated common-law defamation, whereby Defendants systematically expropriated Plaintiff's proprietary, registered cinematographic documentary footage to manufacture and amplify a sensationalized national falsehood: branding an independent video-journalist as an armed, treasonous insurrectionist and violent agent provocateur to capture linear television ratings, harvest corporate advertising revenues, and drive commercial subscription profits. Plaintiff conceived, created, directed, and authored the landmark feature-length documentary motion picture capturing the historic events at the United States Capitol complex on January 6, 2021, duly registered in the United States Copyright Office under the title *The Insurrection of The United States Capitol* (the *"Work"*). Heretofore, prior to Defendants' unlawful interventions, Plaintiff established a viable, lucrative commercial licensing market for the Work, executing bilateral arm's-length cash transactions of $35,000.00 each with premier global broadcast networks, including Cable News Network, Inc. (CNN) and National Broadcasting Company, Inc. (NBC News).

At all times relevant hereto, Defendants operated with full comprehension of statutory copyright clearance mandates and prevailing industry licensing standards; notwithstanding said awareness, Defendants never sought, negotiated, or procured any license, assignment, authorization, or consent to reproduce, synchronize, publicly display, or digitally distribute the Work, or any portion thereof. In lieu of lawful licensing, Defendants pirated Plaintiff's proprietary footage, repeatedly transmitting qualitative, definitive segments across their premier linear television broadcasts (*Fox News @ Night*, *America's Newsroom*, *Hannity*), paywalled digital streaming channels (Fox Nation's *Tucker Carlson Originals: Patriot Purge*), online publishing networks (FoxNews.com), and corporate social media syndication feeds (X). In so doing, Defendants intentionally weaponized Plaintiff's creative work to fabricate an incendiary, highly defamatory narrative, affirmatively branding Plaintiff as a violent *"Antifa leader,"* an armed *"left-wing instigator,"* and a conspiratorial operative who supposedly coordinated, directed, and incited the Capitol breach.

Defendants' conduct transcended legitimate news reporting and protected commentary; rather, Defendants converted Plaintiff's proprietary creative assets into an instrumental vehicle to fabricate the news itself. Defendants published, broadcasted, and syndicated these defamatory falsehoods with subjective knowledge of falsity and constitutional actual malice, in direct contradiction of verified written records wherein Fox News's own investigative journalists explicitly established that Plaintiff maintained zero affiliation with Antifa. When Presidential Proclamation 10887 conferred upon Plaintiff a full and unconditional pardon, and the United States Court of Appeals for the District of Columbia Circuit subsequently vacated all underlying criminal convictions *ab initio*, Defendants' factual assertions of violent criminality and riot orchestration collapsed as

demonstrably false *de jure* and *de facto*. Nevertheless, Defendants have persisted in hosting, streaming, archiving, and monetizing these defamatory publications and infringing media assets across their global digital repositories. To arrest this ongoing tortious injury, restore his professional reputation, and recover the statutory profits wrongfully extracted from his proprietary work, Plaintiff institutes this action for full declaratory, equitable, statutory, and compensatory redress.

**THE PARTIES**

Plaintiff John Earle Sullivan is an individual citizen of the United States residing in Erda, Tooele County, Utah 84074. Plaintiff is an independent investigative video journalist, documentarian, and the sole creator, author, and exclusive copyright proprietor of the registered audiovisual documentary motion picture titled *The Insurrection of The United States Capitol*.

Defendant Fox News Network, LLC (d/b/a Fox News Channel) is a Delaware limited liability company (formed July 1, 2015; NY DOS Entity ID 4810848) maintaining its global headquarters at 1211 Avenue of the Americas, New York, New York 10036. Defendant Fox News Network, LLC owns, operates, and programs the Fox News Channel linear cable network, the Fox Nation subscription streaming service, the digital publishing portal FoxNews.com, and directs the verified corporate broadcast network @FoxNews on X.

Defendant Fox Corporation is a publicly traded Delaware corporation (SEC CIK 0001754301, NASDAQ: FOX, FOXA) maintaining its principal corporate headquarters at 1211 Avenue of the Americas, New York, New York 10036. Defendant Fox Corporation is the ultimate parent company and controlling corporate owner of Fox News Network, LLC-holding 100% of the beneficial membership interests through its wholly owned subsidiary New Fox Holdings LLC-and directly exercises operational oversight, executive policy control, editorial governance, and financial dominion over the linear broadcasts, digital networks, and subscription streaming services of Fox News.

Defendant Porter Berry is the President and Editor-in-Chief of Fox News Digital, maintaining his principal executive editorial office at 1211 Avenue of the Americas, New York, New York 10036. Defendant Berry exercised direct editorial dominion, supervisory authority, and final publishing approval over the digital syndication, curation, and dissemination of all articles and video embeds across FoxNews.com, including the direction of digital reporting personnel and the continuous republication of the defamatory and infringing media assets challenged herein.

Defendant Shannon Bream is a news anchor, host, and Chief Legal Correspondent for Fox News Network, LLC, residing in Arlington County, Virginia (2824 N Beechwood Cir, Arlington, VA 22207) and conducting broadcast operations from Fox News Channel's Washington Bureau at 400 North Capitol St NW, Washington, D.C. 20001. Defendant Bream anchored and hosted national linear broadcasts-including *Fox News @ Night* -during which qualitative, unauthorized excerpts of Plaintiff's copyrighted footage were displayed without a license while transmitting defamatory assertions regarding Plaintiff's journalistic conduct.

Defendant Kevin Corke is a national correspondent and reporter for Fox News Network, LLC, conducting news operations and broadcasts from Fox News Channel's Washington Bureau at 400 North Capitol St NW, Washington, D.C. 20001. Defendant Corke authored, packaged, and delivered national television news segments utilizing unauthorized excerpts of Plaintiff's copyrighted footage, asserting on-air that Plaintiff was an *"alleged"* journalist *"posing"* to incite riotous conduct inside the Capitol.

Defendant Sean Hannity is a prime-time television host for Fox News Network, LLC, residing in Palm Beach County, Florida, maintaining residential and studio facilities in Oyster Bay, New York (406 Centre Island Rd, Oyster Bay, NY 11771), and broadcasting across Fox News Network facilities. Defendant Hannity hosted national broadcasts of *Hannity* and directed the digital syndication of program summaries that repeatedly displayed Plaintiff's copyrighted footage while transmitting false assertions accusing Plaintiff of coordinating, directing, and leading the Capitol breach.

Defendant Tucker Carlson was, at all times relevant hereto, a prime-time television host, creator, and producer for Fox News Network, LLC, residing and operating broadcast facilities in Bryant Pond, Oxford County, Maine (PO Box 173, Bryant Pond, ME 04219) and Boca Grande, Florida, and currently produces media programming through corporate enterprises including Last Country, Inc. and the Tucker Carlson Network (TCN). Defendant Carlson conceived, scripted, produced, and hosted the three-part documentary series *Tucker Carlson Originals: Patriot Purge* on Fox Nation, which synchronized and broadcasted substantial portions of Plaintiff's copyrighted footage behind a commercial subscription paywall while affirmatively portraying Plaintiff as a government-aligned Antifa agent provocateur orchestrating a violent false-flag operation.

Defendant Danielle Wallace is a Breaking News Editor and digital journalist for Fox News Digital domiciled in New York, New York, operating from Fox News editorial facilities at 1211 Avenue of the Americas, New York, NY 10036. Defendant Wallace authored, compiled, and published defamatory digital articles targeting Plaintiff-including the featured digital report (**Exhibit 21**)-and directly executed the unauthorized reproduction, public display, and digital distribution of Plaintiff's copyrighted video frames bearing Plaintiff's visible JAYDEN X watermark.

Defendant Michael Ruiz is a senior reporter for Fox News Digital domiciled in New York, New York, operating from Fox News editorial facilities at 1211 Avenue of the Americas, New York, NY 10036. Defendant Ruiz authored, compiled, and published defamatory digital articles targeting Plaintiff-including the digital publication (**Exhibit 37**) and companion articles-and effectuated the unauthorized reproduction, public display, and commercial distribution of three distinct extracted frames of Plaintiff's copyrighted documentary footage prominently stamped with Plaintiff's on-screen JAYDEN X watermark.

Defendant Laura Ingraham is a television commentator and author residing in Montgomery County, Maryland (Bethesda, MD 20814), maintaining commercial broadcast operations at Fox News Channel's Washington Bureau (400 North Capitol St NW, Washington, D.C. 20001), and controls the verified broadcast account @IngrahamAngle on X. Defendant Ingraham hosted prime-time national broadcasts of *The Ingraham Angle* and authored and distributed a multi-wave social media broadcast campaign to over 5,300,000 followers, deliberately transmitting and amplifying

defamatory falsehoods that branded Plaintiff as an organized Antifa and leftist agent provocateur who orchestrated and incited the Capitol breach.

Defendant Yael Halon is a reporter and Associate Editor for Fox News Digital residing in Kings County, New York (2713 Ave N, Brooklyn, NY 11210) and operating across Fox News Digital editorial facilities. Defendant Halon authored, compiled, and published defamatory digital articles targeting Plaintiff-including digital publications demanding Plaintiff's digital deplatforming based on false assertions of violent insurrectio n-which served as the direct basis for nationwide corporate social media syndication on X inciting public hostility, harassment, and severe reputational injury against Plaintiff.

Defendant John Roberts is a Senior National News Anchor and former Chief White House Correspondent operating from Fox News Channel's Washington Bureau at 400 North Capitol St NW, Washington, D.C. 20001. Defendant Roberts co-anchored the nationwide linear broadcast of *America's Newsroom* during which unauthorized excerpts of Plaintiff's copyrighted footage bearing the on-screen JAYDEN X watermark were displayed without license, consent, or authorization, directly juxtaposed with an artificially distorted mugshot image of Plaintiff featuring enlarged, bulging eyes while broadcasting defamatory assertions accusing Plaintiff of violent armed insurrection (**Exhibit 29**).

## JURISDICTION AND VENUE

This Court is vested with original, exclusive subject-matter jurisdiction over Plaintiff's federal statutory claims set forth in Counts I, II, III, and IV pursuant to 28 U.S.C. § 1331[1] and 28 U.S.C. § 1338(a)[2], because said causes of action arise directly under the Copyright Act of 1976, 17 U.S.C. § 101 et seq.[3], and the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq.

Pursuant to 28 U.S.C. § 1367(a)[4], this Court is vested with supplemental jurisdiction over Plaintiff's state common-law claims set forth in Counts V, VI, VII, VIII, and IX, because said claims are so inextricably intertwined with the federal statutory claims as to form an indivisible part of the same constitutional case or controversy under Article III of the United States Constitution. Both the federal copyright and DMCA claims and the companion state-law tort claims derive from a common nucleus of operative fact: Defendants systematically expropriated, mutilated, and synchronized Plaintiff's proprietary cinematographic recording as the indispensable visual scaffolding to construct, illustrate, and broadcast their sensationalized defamatory falsehoods and tortious character assassination.

---

[2] United States Congress, Title 28 of the United States Code, Section 1338(a), at § 1338(a) (2026): 'The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks.'.

[3] United States Congress, Title 17 of the United States Code, Section 101, at § 101 (2026): 'A 'work made for hire' is--(1) a work prepared by an employee within the scope of his or her employment...'.

[4] United States Congress, Title 28 of the United States Code, Section 1367(a), at § 1367(a) (2026): 'the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy...'.

Venue lies in the United States District Court for the District of Utah pursuant to 28 U.S.C. § 1391(b)(2)[5], because a substantial part of the events, omissions, and tortious injuries giving rise to the claims occurred within this judicial district. Defendants affirmatively projected their broadcast transmissions into this forum by marketing, transmitting, and publicly displaying Plaintiff's copyrighted footage across live nationwide television airwaves-delivering qualitative, unauthorized excerpts directly into Utah households, cable systems, and commercial establishments-and by marketing, selling, and distributing paywalled subscription streams containing Plaintiff's work to Utah consumers. Furthermore, while Plaintiff captured the underlying audiovisual footage while reporting on site at the United States Capitol complex in Washington, D.C., Plaintiff maintains his permanent domicile, principal place of business, and creative media archives in Utah, registered the statutory copyright from Utah, and suffered the focal brunt of Defendants' devastating economic, professional, and reputational injuries within Utah. Under the Tenth Circuit's purposeful direction framework articulated in *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008)[6] and the Supreme Court's effects test in *Calder v. Jones*, 465 U.S. 783, 789 (1984)[7], personal jurisdiction and venue properly lie in this District because Defendants purposefully directed their defamatory and infringing programming into Utah, marketed and publicly displayed Plaintiff's copyrighted footage across Utah television airwaves, expressly broadcasted false allegations regarding Plaintiff's alleged protest activities in Utah, and syndicated defamatory broadcasts through local Utah television affiliates.

[5] United States Congress, Title 28 of the United States Code, Section 1391(b)(2), at § 1391(b)(2) (2026): 'A civil action may be brought in... a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred...'.

[6] Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, at p. 1072 (10th Cir. 2008): 'under the Calder effects test, purposeful direction exists when the defendant committed an intentional action that was expressly aimed at the forum state with knowledge that the brunt of the injury would be felt in the forum state.'.

## FACTUAL BACKGROUND

### PLAINTIFF'S JOURNALISTIC WORK AND THE COPYRIGHTED FOOTAGE

Plaintiff is an independent investigative video-journalist, and documentarian who founded and operates the independent news organization Insurgence USA, exercising protected newsgathering and press rights under the First Amendment to the United States Constitution, U.S. Const. amend. I[8]. On January 6, 2021, Plaintiff was physically present at the United States Capitol complex in Washington, D.C., solely in his professional capacity as an independent video journalist to document and record the unfolding civil unrest and historic breach.

Operating in the field under dangerous conditions, Plaintiff captured a continuous, 1-hour and 10-minute high-definition cinematographic audiovisual recording documenting the exterior barrier breaches, the entry into the Capitol building, and the fatal shooting of Ashli Babbitt in the Speaker's Lobby. Plaintiff titled this original creative work *The Insurrection of The United States Capitol* (the *"Work"*).

Plaintiff is the sole creator, original author, and exclusive copyright proprietor of the Work, holding unencumbered ownership of all right, title, and interest therein. On February 25, 2026, the United States Copyright Office received Plaintiff's completed application, deposit copy, and statutory fee, thereby establishing February 25, 2026, as the

[7] Calder v. Jones, 465 U.S. 783, at p. 789 (1984): 'personal jurisdiction requires that a defendant purposefully directed its activities at the forum state, such that the forum was the focal point of both the story and of the harm suffered.'.

[8] United States Congress, U.S. Const. amend. I, at Amend. I (1791): 'Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.'.

Effective Date of Registration pursuant to 17 U.S.C. § 410(d). Following examination, the Register of Copyrights duly issued Copyright Registration Certificate No. PA 2-585-152 on May 21, 2026, establishing statutory prima facie validity of the copyright and of the facts stated in the certificate pursuant to 17 U.S.C. § 410(c) (**Exhibit 1**).

The incontrovertible statutory provenance and legal validity of Plaintiff's exclusive copyright ownership are memorialized in the official public records of the United States Copyright Office, as corroborated by the Certificate of Registration incorporated herein (**Exhibit 1**):

**Title**

**Title of Work:** The Insurrection of The United States Capitol

**Completion/Publication**

**Year of Completion:** 2021
**Date of 1st Publication:** January 06, 2021
**Nation of 1st Publication:** United States

**Author**

- **Author:** John Earle Sullivan
  **Pseudonym:** Jayden X
  **Author Created:** entire motion picture
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1994

**Copyright Claimant**

**Copyright Claimant:** John Earle Sullivan
1221 W Erda Way, Erda, UT, 84074, United States

*Exhibit 1: Certificate of Registration issued by the United States Copyright Office for 'The Insurrection of The United States Capitol' (Registration Number PA 2-585-152).*

Said certified public record constitutes statutory *prima facie* evidence of the validity of the copyright and of the facts stated therein pursuant to 17 U.S.C. § 410(c),

vesting in Plaintiff the exclusive proprietary authority to license, exploit, and exclude all unauthorized commercial reproduction of the Work.

The Work possesses immense historical, commercial, and journalistic value. Immediately following January 6, 2021, premier global broadcast conglomerates-includin g Cable News Network, Inc. (CNN) and National Broadcasting Company, Inc. (NBC News)-negotiated and executed formal written commercial licensing agreements with Plaintiff, paying cash consideration of $35,000.00 each for limited broadcast rights to specific excerpts.

**DEFENDANTS' UNAUTHORIZED AND WILLFUL USE OF THE COPYRIGHTED FOOTAGE**

At no time prior or subsequent to the infringing acts complained of herein did Defendants-or any corporate officer, producer, editor, or agent acting on their behalf-request, negotiate, or receive any license, authorization, assignment, or consent from Plaintiff to reproduce, synchronize, broadcast, publicly display, stream, or commercially distribute the Work, or any constituent portion thereof.

Notwithstanding Plaintiff's exclusive proprietary rights under 17 U.S.C. § 106, Defendants acquired unauthorized copies of the Work and willfully transmitted substantial, qualitative, and iconic excerpts thereof across their flagship linear television programs-encompassing, *inter alia*, *Fox News @ Night*, *America's Newsroom*, *Hannity*, and *Tucker Carlson Tonight*. Concurrently, Defendants digitized, hosted, archived, and streamed these video assets across their proprietary digital networks, including

FoxNews.com, the Fox Nation subscription streaming service, and the Fox News YouTube syndication portal.

Said unauthorized commercial dissemination directly competed with, degraded, and usurped Plaintiff's established commercial licensing market. By transmitting the Work to tens of millions of viewers across broadcast and digital networks without remitting licensing fees, Defendants destroyed the market exclusivity of the footage, impaired its commercial value, and deprived Plaintiff of customary licensing remuneration and statutory profits.

Defendants perpetrated this infringement willfully, deliberately, and in conscious disregard of Plaintiff's exclusive statutory rights within the contemplation of 17 U.S.C. § 504(c)(2). As sophisticated media conglomerates maintaining specialized intellectual property clearance and legal affairs departments, Defendants possessed actual subjective knowledge that the Work was authored and owned by Plaintiff and was devoid of copyright clearance; nevertheless, Defendants intentionally broadcasted and monetized the Work for corporate enrichment.

**FOX NATION 'PATRIOT PURGE' COMMERCIAL PAYWALL EXPLOITATION & DEFAMATION**

Defendants Fox News Network, LLC, Fox Corporation, and Tucker Carlson jointly produced, authored, and premiered a three-part documentary series titled *Tucker Carlson Originals: Patriot Purge* exclusively on the Fox Nation streaming platform.

In Season 1, Episode 1 (*"Patriot Purge: Part 1"*), Defendants synchronized Plaintiff's high-definition motion picture recording of the Capitol terrace overlooking the crowd, prominently displaying Plaintiff's on-screen JAYDENX watermark in the lower right quadrant. Defendants also spliced Plaintiff's ambient audio dialogue recorded inside the Capitol hallways into the episode's soundtrack.

As corroborated by verified broadcast transmission captures extracted from *Tucker Carlson Originals: Patriot Purge: Part 1*, Defendants reproduced, synchronized, and publicly exhibited Plaintiff's high-definition motion picture recording of the Capitol terrace, deliberately retaining Plaintiff's prominent on-screen JAYDENX watermark in the lower right quadrant while expropriating the asset for commercial gain (**Exhibit 43**):




*Exhibit 43: Fox Nation Patriot Purge Episode 1 broadcast capture displaying Plaintiff's on-screen JAYDENX watermark in lower right quadrant.*

This incontrovertible visual evidence demonstrates *res ipsa loquitur* Defendants' intentional, bad-faith commercial exploitation of Plaintiff's registered Work, evincing complete awareness of Plaintiff's proprietary ownership while converting Plaintiff's creative labor into proprietary subscription assets behind a commercial paywall.

Throughout Episode 1, Defendants paired Plaintiff's footage with defamatory statements delivered by security analyst J. Michael Waller, who asserted on-air that Plaintiff was a *"full-time left-wing activist"* who *"organizes all of these events and riots in Utah with his group Insurgence USA."*

Defendants also broadcasted fabricated claims by interviewee Tayler Hansen, who alleged on-air that Plaintiff's group *"attacked me, ruining my bike... I actually had a gun point into my head at that rally specifically... from John Sullivan's Insurgence USA*

*group,"* and falsely asserted that Plaintiff changed from *"black bloc into Trump gear"* right before the breach to orchestrate violence.

In Season 1, Episode 3 (*"Patriot Purge: Part 3"*), Defendants synchronized and streamed Plaintiff's proprietary footage of the Speaker's Lobby shooting behind the Fox Nation commercial paywall to drive corporate subscriber acquisitions. While documenting the scene, Plaintiff observed an officer draw and aim a firearm through the doorway and immediately shouted urgent warnings to the crowd-exclaiming that there was a gun in an active, life-saving effort to alert individuals to lethal danger and prevent bloodshed. Rather than accurately portraying Plaintiff's responsible, protective warning, Defendants deceptively weaponized that moment through voiceover narration-specifically proclaiming that *"the only warning was from John Sullivan screaming gun"*-to advance an unsubstantiated conspiratorial narrative that falsely branded Plaintiff as an undercover agent provocateur orchestrating the breach rather than an independent journalist warning civilians of imminent deadly force.

Defendants locked Episodes 1 through 3 behind the Fox Nation subscription paywall ($5.99 per month / $64.99 per year), gatekeeping the video content behind commercial conversion prompts (*"Join Fox Nation Now!"*, *"Start Your Free Trial"*, *"Get Started"*). Defendants directly monetized Plaintiff's registered audiovisual work to drive corporate subscription revenues. Under *Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 562 (1985)[9], Defendants' bad-faith commercial paywall exploitation directly usurped Plaintiff's established licensing market, expropriating Plaintiff's creative work to reap commercial subscription profits without remitting the customary licensing price.

**DEFENDANTS' COORDINATED TELEVISION AND DIGITAL DEFAMATORY CAMPAIGN**

Defendants did not merely broadcast isolated news segments; they orchestrated a synchronized, enterprise-wide media campaign designed to saturate the public square with a singular defamatory premise: that Plaintiff was an undercover political operative orchestrating violent insurrection under the guise of journalism. To execute this narrative, Defendants deployed their linear television broadcasts to establish emotional outrage, their digital publishing apparatus to entrench permanent searchable smears, and their social media channels to unleash viral public hostility. At every stage of this campaign, Defendants commandeered Plaintiff's proprietary cinematographic recording as the indispensable visual weapon to validate their fabrications.

The linear television blitz served as the broadcast spearhead. On the nationwide broadcast of *America's Newsroom*, co-anchor Defendant John Roberts personally presented qualitative excerpts of Plaintiff's copyrighted footage-blatantly stamped with Plaintiff's on-screen 'YOUTUBE / JAYDEN X' credit-while deliberately juxtaposing that proprietary footage with a completely fabricated pseudo-mugshot-specifically an unauthenticated image bearing an interior door and latch in the background, rather than any official booking facility backdrop-doctored with artificially dilated ocular proportions to depict grotesquely enlarged, bulging eyes (**Exhibit 29**). Broadcaster and guest Mike Huckabee joined in broadcasting defamatory assertions branding Plaintiff as a violent armed insurrectionist, converting an independent journalistic recording into what

[9] Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S. 539, at p. 562 (1985): 'the crux of profit is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material without paying the customary price.'.

Defendants falsely and sensationally asserted was *"visual proof of treason."* That same evening on *Fox News @ Night*, Defendants Shannon Bream and Kevin Corke expanded the attack, with Defendant Corke asserting on-air that Plaintiff was *"allegedly posing as a journalist"* and was captured on video *"egging on protesters"* inside the Capitol building. Prime-time host Defendant Sean Hannity reinforced the institutional assault during national broadcasts of *Hannity*, falsely portraying Plaintiff's journalistic presence as calculated leftist instigation and proclaiming to millions of viewers that Plaintiff had coordinated the breach and spearheaded the mob.

As demonstrated by the contemporaneous linear broadcast transmission records preserved in Exhibit 29, Defendants systematically paired Plaintiff's copyrighted audiovisual footage-bearing Plaintiff's on-screen YOUTUBE / JAYDEN X watermark attribution-directly adjacent to an artificially altered, unauthenticated image falsely masqueraded as an arrest mugshot, engineered with unnaturally dilated, bulging eyes and displaying an unmistakable interior door in the background (**Exhibit 29**):




*Exhibit 29: Fox News America's Newsroom broadcast still displaying fabricated, unauthenticated image (featuring interior residential door in background) doctored with bulging eyes and falsely broadcasted as an arrest mugshot adjacent to FBI suspect chyron.*

This contemporaneous broadcast capture provides unassailable objective documentation of Defendants' calculated visual manipulation and fraud. The broadcasted image is demonstrably not an official law enforcement arrest or booking photograph; official booking facilities utilize standardized height markers, neutral intake screens, or institutional backdrops, whereas the image aired by Defendants prominently depicts an ordinary interior door with an interior latch. Defendants deliberately seized upon an unauthenticated, non-custodial image, manipulated Plaintiff's facial anatomy to exaggerate and distort his eyes, and deceitfully broadcasted the fabricated image beneath the chyron *"FBI TRACKING DOWN CAPITOL RIOT SUSPECTS"* to falsely portray Plaintiff as a deranged, dangerous criminal booked by federal authorities, evidencing a bad-faith editorial effort to dehumanize Plaintiff before a national audience, impeach his professional standing, and visually fabricate the appearance of violent mental derangement.

Prime-time commentator Defendant Laura Ingraham weaponized both linear airwaves and digital syndication to amplify the smear across an audience of millions. Hosting *The Ingraham Angle*, Ingraham echoed the false-flag narrative while concurrently distributing a targeted social media campaign to her 5,300,000+ followers on X (@IngrahamAngle). In connection with the Capitol breach, Ingraham broadcasted Post ID 1347011865885487106 targeting Plaintiff in connection with the fatal shooting of Ashli Babbitt. Ingraham further published Post ID 1349869656878804994 and Post ID 1349896 914171547649, deliberately quoting commentator Andy Ngo to brand Plaintiff as an organized anti-Trump anarchist and leftist agitator who infiltrated the Capitol to orchestrate violence. Ingraham's broadcasts ignited a frenzy of public outrage, generating

over 1,499 public responses that accepted the falsehood as established fact and unleashed severe reputational ruin and violent threats against Plaintiff.

Simultaneously, Fox News Digital-operating under the supervisory dominion of President and Editor-in-Chief Defendant Porter Berry-transformed these ephemeral broadcasts into an unyielding, permanent digital indictment on FoxNews.com. Senior digital reporter Defendant Michael Ruiz authored a cascade of defamatory publications that systematically criminalized Plaintiff's journalistic profession. In his flagship article, *Left-wing activist charged in Capitol riot after saying he was just there to 'document'* (**Exhibit 37**), Ruiz branded Plaintiff with inflammatory headlines proclaiming *"BLM activist inside Capitol claims he was 'documenting' riots, once said 'burn it all down'"*, while illicitly extracting, reproducing, and commercially distributing three separate still frames from Plaintiff's copyrighted footage, each prominently stamped with Plaintiff's on-screen JAYDEN X watermark. Ruiz subsequently published companion hit pieces-including *Uber hides ad featuring left-wing activist charged in Capitol riot*, *BLM Utah leader disavows left-wing Capitol activist John Sullivan*, and *DOJ seeks pre-trial jail for left-wing activist charged in Capitol riot*-deliberately compounding the smear by labeling Plaintiff a *"recurring threat"* and an extremist pariah.

Breaking News Editor Defendant Danielle Wallace escalated the campaign through targeted digital articles designed to strip Plaintiff of both his defense and his creative livelihood. In her published digital article, *DOJ accuses left-wing activist of inciting Trump supporters on Jan. 6* (**Exhibit 21**), Wallace declared that Plaintiff's documentation was an illicit sham, writing: *"It does not matter whether Sullivan was holding a camera to record his crimes. He incited the mob at every step."* To visually anchor her defamatory

thesis, Wallace reproduced and distributed multiple still frames pirated directly from Plaintiff's copyrighted footage, retaining Plaintiff's visible JAYDEN X watermark without license or consent. Reporter Stephanie Pagones contributed to the smear with *Left-wing activist seen at Capitol wore gas mask, said he had knife during riot*, falsely portraying Plaintiff as an armed combatant. Reporter Lucas Manfredi published *Feds seize $90K from supposed left-wing activist who sold footage of Capitol riot*, recasting Plaintiff's legitimate commercial licensing contracts with CNN and NBC News as the illicit proceeds of crime. Concurrently, Defendant Yael Halon published *Twitter bans Trump, but left-wing activist charged in Capitol riot still active on platform*, demanding Plaintiff's total digital deplatforming-an article Fox News immediately converted into Wave 4 of its corporate social media blitz to incite viral mob harassment.

Far from an accidental series of isolated reporting errors, Defendants' defamatory campaign represents a deliberate, institutionalized editorial commitment. Defendant Fox News Network, LLC and Defendant Porter Berry cemented this institutional narrative by hiring digital breaking news writer Eric Mack directly into the Fox News Digital newsroom. For over a decade prior, Mack had served as a primary author at Newsmax Media, Inc., fabricating and circulating the exact defamatory conspiracy theories targeting Plaintiff-including publications quoting Rudolph W. Giuliani to claim that the Capitol breach was an anti-Trump false flag orchestrated by Plaintiff. By recruiting and elevating the very operative who seeded these fabrications, Fox News demonstrated its wholesale institutional adoption and perpetuation of the defamatory narrative across the national conservative media ecosystem.

**FOX NEWS X (TWITTER) MULTI-WAVE SOCIAL MEDIA DEFAMATION BLITZ**

To maximize the velocity and reach of this defamatory campaign, Defendant Fox News Network, LLC weaponized its verified corporate social media distribution channel on X (@FoxNews)-commanding an active following exceeding 29,409,759 subscribers-to unleash a coordinated, multi-wave blitz calibrated to polarize its audience and direct public hostility against Plaintiff. Rather than functioning as neutral news dissemination, these corporate transmittals operated as algorithmic amplifiers engineered to convert unsubstantiated rumors into viral hostility.

The opening assault commenced immediately following the Capitol breach, when Fox News published Post ID 1347540790789210115 to its nearly thirty million followers, affirmatively branding Plaintiff as a *"BLM activist"* whose documentary presence was a fraudulent cover for rioting. This initial salvo garnered 2,322 likes, 952 reposts, and 1,457 hostile public comments branding Plaintiff as an Antifa terrorist. Fox News rapidly intensified the offensive through Post ID 1349880575834935296, pairing the fabricated, unauthenticated image-bearing the visible interior door in the background and falsely framed as an official booking photo-with defamatory captions declaring that the *"left-wing activist"* claiming to document the event had been arrested and charged, thereby generating 3,882 likes, 1,056 reposts, and 739 comments purposefully solicited to strip Plaintiff of his press credentials in the public eye. Fox News then militarized the narrative in Post ID 1350187784045264897, broadcasting sensationalized assertions that Plaintiff wore a gas mask and brandished a knife during the riot, yielding 1,682 likes, 605 reposts, and 673 comments branding Plaintiff as an armed militant.

The campaign reached its apex in Post ID 1350956235630194689, wherein Fox News published a polarizing comparative graphic juxtaposing Twitter's permanent deplatforming of the President of the United States against Plaintiff's continued access to social media. Engineered to inflame partisan resentment, this final wave triggered an explosive viral reaction of 11,994 likes, 5,229 reposts, and 1,199 comments that directly incited doxxing campaigns, relentless online harassment, and explicit death threats against Plaintiff. In the aggregate, Defendants' institutional social media offensive mobilized an audience of 29.4 million users to generate over 19,880 likes, 7,842 reposts, and 4,068 public comments, successfully transforming corporate social media channels into an engine of continuous emotional distress, catastrophic reputational destruction, and severe physical peril for Plaintiff.

**ACTUAL MALICE AND RECKLESS DISREGARD FOR THE TRUTH**

Defendants published, republished, broadcasted, and digitally syndicated each of the defamatory falsehoods complained of herein with constitutional actual malice-acting with subjective awareness of probable falsity, or in reckless disregard of whether the assertions were true or false, within the governing parameters of *New York Times Co. v. Sullivan*[2], 376 U.S. 254, 279-280 (1964) and *St. Amant v. Thompson*[3], 390 U.S. 727, 731 (1968).

Irrefutable documentary evidence of Defendants' subjective knowledge is embodied in Defendant Fox News Network, LLC's own editorial records. Specifically, in an investigative news dispatch compiled by reporter Stephanie Pagones, Fox News published an unequivocal, unretracted editorial admission: *"Sources told Fox News Sullivan is not*

*known to be affiliated with Antifa"* (**Exhibit 22**). By virtue of said contemporaneous editorial finding, Defendants possessed verified, incontrovertible internal intelligence establishing that Plaintiff maintained zero organizational affiliation with Antifa, was not an instigator or agent provocateur, and was present at the Capitol solely in the lawful exercise of independent documentary newsgathering.

Notwithstanding their immediate custody and possession of said verified exculpatory intelligence, Defendants deliberately suppressed the truth and embarked upon an institutional campaign to disseminate the diametric opposite falsehood. For years following this written newsroom admission, Defendants-across prime-time cable broadcasts, Tucker Carlson's *Patriot Purge* documentary series, and Danielle Wallace's digital articles-relentlessly branded Plaintiff as an *"Antifa leader,"* a violent armed rioter, and an agent provocateur coordinating a false flag operation. Under settled constitutional precedent, publishing serious criminal allegations while possessing internal documentary verification of their falsity constitutes actual malice as a matter of law under *New York Times Co. v. Sullivan*[2], 376 U.S. 254, 279-280 (1964) and *St. Amant v. Thompson*[3], 390 U.S. 727, 731 (1968).

Defendants further evinced reckless disregard for the truth by purposefully avoiding obvious avenues of investigation and spurning fundamental journalistic standards. Rather than investigating verifiable facts, Defendants relied on partisan internet rumors to fabricate assertions that Plaintiff was *"posing"* as a journalist, had pointed a gun at a demonstrator's head in Utah, and had coordinated the breach of the Capitol. Defendants deliberately refused to inspect Plaintiff's accredited press credentials, review his extensive public catalog of documentary journalism, or examine the bona fide commercial licensing

agreements executed with global news organizations like CNN and NBC News, which conclusively established Plaintiff's legitimate standing as a professional documentarian.

**PLAINTIFF'S COMPLETE LEGAL EXONERATION AND VACATUR OF CONVICTIONS**

Defendants' persistent characterization of Plaintiff as a violent armed insurrectionist, treasonous riot organizer, and convicted criminal stands decisively, judicially, and constitutionally foreclosed by final judicial decrees and executive clemency establishing Plaintiff's plenary legal exoneration across all state and federal jurisdictions.

As a threshold matter, in the Fourth Judicial District Court for the State of Utah, the Honorable James Brady granted Plaintiff's Motion to Dismiss for Lack of Jurisdiction in *State of Utah v. John Sullivan*, Case No. 201402183, terminating the state prosecution and releasing Plaintiff's bail with zero finding of liability or guilt.

Moreover, pursuant to the plenary constitutional prerogative vested in the Chief Executive under Article II, Section 2, Clause 1 of the United States Constitution, the President of the United States issued Presidential Proclamation 10887, conferring upon Plaintiff a full, free, and unconditional pardon. Operationalizing the constitutional effect of said executive act, the United States Court of Appeals for the District of Columbia Circuit issued its formal mandate in *United States v. John Earle Sullivan*, Case No. 24-3051, ordering the vacatur of Plaintiff's underlying convictions *ab initio* and extinguishing all criminal culpability. Pursuant to and in execution of the appellate mandate, the Honorable Royce C. Lamberth of the United States District Court for the District of Columbia entered

a final order in Case No. 1:21-cr-78-RCL, Dkt. 164, dismissing the underlying indictment and all counts against Plaintiff with prejudice.

Consequently, by operation of binding judicial mandates and constitutional clemency, Defendants' assertions imputing violent felony offenses, treason, and riot instigation to Plaintiff are false *de jure* and *de facto*, stripping Defendants of any colorable defense of substantial truth.

**CONTINUOUS DIGITAL DISTRIBUTION AND POST-REGISTRATION INFRINGEMENT**

Following the issuance of Plaintiff's Copyright Registration Certificate No. PA 2-585-152, Defendants have continuously hosted, displayed, distributed, and monetized the infringing video segments and defamatory publications across their public digital archives, including FoxNews.com, Fox Nation, YouTube, and X (@FoxNews).

Defendants have refused to retract their defamatory publications or remove the infringing audiovisual works, committing ongoing post-registration copyright infringement and perpetuating continuous harm to Plaintiff's reputation, commercial livelihood, and personal safety.

**DEFENDANTS' COMMERCIAL EXPLOITATION, MARKET HARM, AND USURPATION OF LICENSING REVENUES**

Defendants engaged in a predatory, willful commercial expropriation of Plaintiff's Work designed to extract substantial corporate revenues while systematically bypassing customary licensing channels and destroying the commercial market value of Plaintiff's cinematographic creation.

The Work constitutes an original cinematographic audiovisual production embodying numerous creative, aesthetic, and technical determinations-encompassing camera orientation, lens selection, compositional framing, spatial pacing, persistence under hazardous riot conditions, and live contemporaneous narration. As established in *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 341, 345 (1991)[10], the Work effortlessly surpasses the constitutional and statutory threshold of creative originality protected by federal copyright law.

Defendants extracted, synchronized, and repeatedly broadcasted the qualitative heart of the Work-specifically, the definitive, irreplaceable footage documenting the inner Capitol breach and the fatal shooting of Ashli Babbitt in the Speaker's Lobby. Defendants commandeered this irreplaceable footage not for any legitimate independent production, but as the foundational visual centerpiece to anchor commercial broadcasts and drive paid subscriber acquisitions behind the Fox Nation tiered subscription paywall ($5.99 per month / $64.99 per year). Under *Harper & Row, Publishers, Inc. v. Nation Enterprises*,

[10] Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 341, at p. 345 (1991): 'Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'.

471 U.S. 539, 562 (1985)[9], the crux of commercial exploitation is whether the user stands to profit from the copyrighted material without paying the customary price. Furthermore, Defendants' bad faith in exploiting the footage while deliberately retaining Plaintiff's prominent on-screen JAYDEN X watermark confirms that Defendants sought to trade upon the authenticity and visual authority of Plaintiff's recording without remitting the customary licensing fee.

Prior to Defendants' unlawful interventions, Plaintiff established a bona fide, lucrative commercial licensing market for the Work, entering into valid, arm's-length cash contracts with premier global broadcast networks-including CNN and NBC News-for consideration of $35,000.00 each. By broadcasting, streaming, paywalling, and archiving the Work without procuring a license or remitting fees, Defendants directly usurped Plaintiff's primary commercial licensing market, destroyed the commercial exclusivity of the footage, and deprived Plaintiff of customary licensing revenues of $35,000.00 or more per broadcast licensee.

**WILLFUL POST-REGISTRATION INFRINGEMENT AND STATUTORY REMEDIES**

**(17 U.S.C. §§ 504, 505)**

Plaintiff is entitled to invoke the full panoply of monetary, statutory, and equitable remedies established under the Copyright Act. Save and except to the extent that any discrete pre-registration transmissions may be subject to the remedial limitations of 17 U.S.C. § 412[11], Section 412 does not limit, impair, or foreclose Plaintiff's absolute statutory right to recover actual damages and disgorgement of Defendants' profits pursuant to 17 U.S.C. § 504(b).[12]

**Unrestricted Availability of Actual Damages and Disgorged Profits (17 U.S.C. § 504(b)).** Section 412 applies strictly and exclusively to statutory damages and attorney's fees under §§ 504(c) and 505. It leaves wholly unaffected Plaintiff's statutory entitlement to recover actual damages-encompassing lost customary licensing fees of $35,000.00 or more per broadcast licensee-together with the disgorgement of all profits realized by Defendants attributable to the infringement pursuant to 17 U.S.C. § 504(b).[12] In establishing Defendants' profits, Plaintiff is required under statutory law to prove only Defendants' gross revenues-encompassing Fox Nation subscription fees and commercial broadcast advertising revenues-whereupon the burden of proof (*onus probandi*) shifts entirely onto Defendants to establish deductible expenses and elements of profit attributable to factors other than the copyrighted work.

[11] United States Congress, Title 17 of the United States Code, Section 412, at § 412 (2026): 'In any action under this title... no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for--(1) any infringement of copyright in an unpublished work commenced before the...'.

[12] United States Congress, Title 17 of the United States Code, Section 504(b), at § 504(b) (2026): 'The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses...'.

**Availability of Statutory Damages for Independent Post-Registration Infringements.** Defendants committed multiple distinct, independent acts of unauthorized digital streaming, hosting, and commercial distribution occurring subsequent to the effective registration date of the Work (Registration Certificate No. PA 2-585-152), for which statutory damages up to $150,000.00 per willful infringement under 17 U.S.C. § 504(c) and full costs and reasonable attorney's fees under 17 U.S.C. § 505 remain fully available as a matter of law.

## DEFAMATION PER SE, PRESUMED HARM, AND CONSTITUTIONAL ACTUAL MALICE

Defendants' published fabrications constitute actionable defamation per se under controlling Utah common law, establishing presumed damages and satisfying the most rigorous constitutional fault requirements.

Pursuant to the definitive ruling of the Utah Supreme Court in *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[13], public statements falsely imputing to an individual the commission of crimes, fraud, or unlawful acts are capable of defamatory meaning and actionable false light as a matter of law. Under *Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995)[14] and *Jacob v. Bezzant*, 2009 UT 37, ¶ 21 (2009)[15], statements charging violent felony offenses (including pointing a firearm at a journalist's head, armed assault,

[12] United States Congress, Title 17 of the United States Code, Section 504(b), at § 504(b) (2026): 'The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses...'.

and inciting violent insurrection) constitute defamation per se, where general damages are presumed *ipso jure*.

Under the constitutional framework articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)[16] and *Gertz v. Robert Welch, Inc.*[4], 418 U.S. 323, 342 (1974), as made applicable to state-law tort adjudications through the Due Process Clause of the Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1[17], the First Amendment's guarantees circumscribe the substantive reach of state defamation laws; yet, as the Supreme Court held in *Gertz*, 418 U.S. at 340, there exists no constitutional value in false statements of fact, nor does the Fourteenth Amendment Due Process Clause afford any shelter to commercial media entities that publish defamatory falsehoods with subjective knowledge of falsity or reckless disregard for the truth. Furthermore, the Utah Supreme Court in *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[18] conclusively established that conditional privileges (such as the fair-report or public-interest privileges) cannot be resolved on a motion to dismiss where a plaintiff has alleged constitutional actual malice. While Plaintiff, as an independent freelance documentarian, is required under Utah law to establish merely ordinary negligence under the private-figure standard articulated in *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 973 (Utah 1981)[19], Plaintiff's allegations readily satisfy the pinnacle threshold of constitutional actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)[16] and *St.*

[13] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'publicly accusing an individual of committing crimes, fraud, or bad acts is capable of conveying a defamatory meaning and placing the person in a false light; affirmative defense privileges cannot defeat a defamation claim at the motion-to-dismiss stage when actual malice is sufficiently alleged.'.

[14] Russell v. Standard Corp., 898 P.2d 263, at p. 264 (1995): 'To state a claim for defamation under Utah law, a plaintiff must show: (1) the defendant published the statements concerning the plaintiff; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages.'.

[15] Jacob v. Bezzant, 2009 UT 37, at ¶ 21 (2009): 'Statements are defamatory per se if they charge the commission of a crime involving moral turpitude or impute conduct incompatible with the proper exercise of a lawful profession or business, and in such cases damages are presumed.'.

*Amant v. Thompson*, 390 U.S. 727, 731 (1968)[20], in that Defendant Fox News Network, LLC entered an official written newsroom admission confirming that investigative sources verified Plaintiff had zero affiliation with Antifa, yet Defendants deliberately chose to broadcast, publish, and syndicate the diametric opposite falsehood across national media airwaves for years.

Defendants' defamatory publications and false light public portrayals are not confined to historical, one-time broadcasts; rather, Defendants have continuously hosted, archived, streamed, and actively monetized the defamatory digital articles and video episodes across FoxNews.com, Fox Nation, and corporate social media channels through the date of this filing. Defendants continuously serve paid subscriber streams on Fox Nation accessing *Tucker Carlson Originals: Patriot Purge* and dynamic programmatic advertisements on FoxNews.com, deriving ongoing corporate revenues while perpetuating enduring reputational, professional, and economic injury to Plaintiff.

---

[16] New York Times Co. v. Sullivan, 376 U.S. 254, at pp. 279-280 (1964): 'The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'.

[17] United States Congress, U.S. Const. amend. XIV, § 1, at Amend. XIV, § 1 (1868): 'All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'.

[18] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'affirmative defense privileges cannot defeat a defamation claim at the motion-to-dismiss stage when actual malice is sufficiently alleged.'.

[20] St. Amant v. Thompson, 390 U.S. 727, at p. 731 (1968): 'Reckless disregard... is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'.

## CLAIMS FOR RELIEF

### COUNT I: DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501) -- LINEAR BROADCAST & PAYWALL STREAMING

***(Against Defendants Fox News Network, LLC, Fox Corporation, Tucker Carlson, Porter Berry, and John Roberts)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Plaintiff is the original cinematographic author, sole creator, and unencumbered copyright proprietor of the registered audiovisual documentary motion picture titled *The Insurrection of The United States Capitol*. The United States Copyright Office duly issued Copyright Registration Certificate No. PA 2-585-152 for the Work, establishing statutory *prima facie* validity of the copyright and of the facts stated in the certificate pursuant to 17 U.S.C. § 410(c).[21] Pursuant to 17 U.S.C. § 106[22], Plaintiff is vested with the sovereign, exclusive statutory prerogatives to reproduce, prepare derivative works based upon, distribute copies of, publicly perform, and publicly display the Work. Originality requires only independent creation by the author coupled with a minimal quantum of intellectual creativity under *Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 341, 345

[16] New York Times Co. v. Sullivan, 376 U.S. 254, at pp. 279-280 (1964): 'The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'.

[19] Seegmiller v. KSL, Inc., 626 P.2d 968, at p. 973 (1981): 'Under Utah law, the standard of fault in a defamation action by a private figure is negligence, whereas a public figure must prove actual malice.'.

[20] St. Amant v. Thompson, 390 U.S. 727, at p. 731 (1968): 'Reckless disregard... is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'.

(1991)[10], which requisite quantum of original cinematographic visual composition, continuous temporal pacing, and contemporaneous audio recording the Work incontrovertibly possesses.

Without license, authorization, assignment, or consent, Defendants Fox News Network, LLC, Fox Corporation, Tucker Carlson, Porter Berry, and John Roberts willfully infringed Plaintiff's exclusive statutory rights under 17 U.S.C. § 501[23] by systematically reproducing, synchronizing, publicly performing, and commercially broadcasting substantial, qualitative, and iconic portions of the Work across nationwide linear cable television and commercial paywalled streaming channels. Said infringing transmissions encompass, *inter alia*, the nationwide linear television broadcast of *America's Newsroom* anchored by Defendant John Roberts-who personally presented and displayed qualitative excerpts of Plaintiff's copyrighted footage directly juxtaposed with a digitally distorted booking photograph (**Exhibit 29**)-and the commercial subscription streaming exploitation across Season 1, Episodes 1 and 3 of *Tucker Carlson Originals: Patriot Purge* on Fox Nation.

Defendants committed this infringement willfully, purposefully, and in conscious disregard of Plaintiff's exclusive proprietary rights within the statutory meaning of 17 U.S.C. § 504(c)(2).[24] Defendants possessed actual subjective knowledge of Plaintiff's

[21] United States Congress, Title 17 of the United States Code, Section 410(c), at § 410(c) (2026): 'In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.'.

[22] United States Congress, Title 17 of the United States Code, Section 106, at § 106 (2026): 'Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following...'.

[23] United States Congress, Title 17 of the United States Code, Section 501(a), at § 501(a) (2026): 'Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a)... is an infringer of the copyright or right of the author, as the case may be.'.

exclusive authorship and ownership-manifested visually by the prominent JAYDEN X watermark displayed on the video face itself-and fully understood that no statutory clearance or commercial license had been granted. Yet Defendants deliberately appropriated, synchronized, and monetized the Work behind the Fox Nation tiered subscription paywall ($5.99/month; $64.99/year) to drive recurring subscriber acquisitions and linear broadcast ratings, purposefully exploiting Plaintiff's creative cinematographic labor to reap corporate revenues while completely bypassing customary licensing channels and directly supplanting Plaintiff's primary commercial licensing market.

Pursuant to 17 U.S.C. § 504(b)[25], Plaintiff is entitled to recover the actual damages suffered by him as a result of all infringements committed by Defendants from January 6, 2021, to the present-including lost customary licensing fees of $35,000.00 or more per broadcast network-together with all profits of Defendants attributable to the infringement, encompassing linear advertising revenues and Fox Nation subscriber acquisition revenues. Furthermore, because Defendants have persistently hosted, displayed, streamed, and commercially monetized the infringing audiovisual assets across Fox Nation subsequent to the February 25, 2026 effective date of registration, Plaintiff is entitled to elect statutory damages up to $150,000.00 for each discrete, willful post-registration infringement pursuant to 17 U.S.C. § 504(c)(2)[26], alongside an award of full costs and reasonable attorney's fees pursuant to 17 U.S.C. § 505.[27]

---

[24] United States Congress, Title 17 of the United States Code, Section 504(c)(2), at § 504(c)(2) (2026): 'In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.'.

[25] United States Congress, Title 17 of the United States Code, Section 504(b), at § 504(b) (2026): 'The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses...'.

**COUNT II: DIRECT COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 106, 501) -- DIGITAL ARTICLES, VIDEO HOSTING & THUMBNAILS**

***(Against Defendants Fox News Network, LLC, Fox Corporation, Porter Berry, Danielle Wallace, and Michael Ruiz)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Plaintiff is the sole owner and copyright proprietor of the registered motion picture *The Insurrection of The United States Capitol* (Registration No. PA 2-585-152). Pursuant to 17 U.S.C. § 106(1), (3), and (5)[22], Plaintiff possesses the exclusive statutory rights to reproduce, distribute copies of, and publicly display the Work and individual pictorial frames thereof.

Without license, authorization, or legal excuse, Defendants Fox News Network, LLC, Fox Corporation, Porter Berry, Danielle Wallace, and Michael Ruiz directly infringed Plaintiff's exclusive copyright by reproducing, formatting, uploading, publicly displaying, and digitally syndicating individual pictorial frame captures, audiovisual clips, and digital video thumbnails derived directly from the Work across the domain FoxNews.com and associated digital mobile applications. Said infringing digital

---

[26] United States Congress, Title 17 of the United States Code, Section 504(c), at § 504(c) (2026): 'the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action... In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000.'.

[27] United States Congress, Title 17 of the United States Code, Section 505, at § 505 (2026): 'In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.'.

publications encompass, *inter alia*, the unauthorized reproduction, public display, and digital distribution of watermarked video captures within online articles authored, compiled, and published across FoxNews.com by Defendants Danielle Wallace (**Exhibit 21**) and Michael Ruiz (**Exhibit 37**) under the supervisory editorial dominion of Defendant Porter Berry.

Defendants Fox News Network, LLC and Fox Corporation continuously monetize said digital articles and embedded video assets through programmatic display advertising networks, dynamic automated video ad-insertion prerolls, and real-time behavioral user tracking, thereby converting Plaintiff's creative expression into automated corporate digital revenue.

Defendants committed said digital infringements willfully under 17 U.S.C. § 504(c)(2).[24] Pursuant to 17 U.S.C. § 504(b)[25], Plaintiff is entitled to recover all actual damages sustained-including benchmark licensing fees of $35,000.00 or more per digital deployment-and an accounting and disgorgement of all gross digital advertising revenues and algorithmic yield derived by Defendants. For all unauthorized digital reproductions, public displays, and automated dynamic syndications persisting or occurring subsequent to February 25, 2026, Plaintiff is entitled to elect statutory damages up to $150,000.00 per willful infringement under 17 U.S.C. § 504(c)(2)[26], together with costs and reasonable attorney's fees under 17 U.S.C. § 505.[27]

**COUNT III: REMOVAL AND ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §§ 1202(B), 1203)**

***(Against Defendants Fox News Network, LLC, Fox Corporation, John Roberts, and Porter Berry)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

At all relevant times, Plaintiff's cinematographic Work embodied prominent, authentic Copyright Management Information (*"CMI"*) within the statutory definition of 17 U.S.C. § 1202(c), specifically including the visible digital title and authorial attribution watermark JAYDEN X burned directly into the visual frames of the documentary video.

Defendants Fox News Network, LLC, Fox Corporation, John Roberts, and Porter Berry violated 17 U.S.C. § 1202(b)(1)-(3)[28] by intentionally removing, cropping, obscuring, and altering Plaintiff's CMI without authority of the copyright owner, and by distributing, importing for distribution, and publicly performing the Work and digital derivative crops thereof knowing that CMI had been removed, cropped, and altered.

[28] United States Congress, Title 17 of the United States Code, Section 1202(b), at § 1202(b) (2026): 'No person shall, without the authority of the copyright owner or the law--(1) intentionally remove or alter any copyright management information... (2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or (3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law, knowing, or... having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of any right under this title.'.

Specifically, in the national television broadcast of *America's Newsroom* anchored by Defendant John Roberts (**Exhibit 29**) and in multiple digital video clips and article header assets supervised by Defendant Porter Berry, Defendants cropped out, superimposed lower-third graphical overlays upon, and digitally obscured Plaintiff's JAYDEN X authorial attribution.

Defendants committed said acts knowingly and with full knowledge, or having reasonable grounds to know, that such removal and alteration of CMI would induce, enable, facilitate, or conceal infringement of Plaintiff's exclusive copyright under Title 17, within the meaning of 17 U.S.C. § 1202(b)[28] and controlling federal jurisprudence in *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171-172 (2d Cir. 2020).[29]

Pursuant to 17 U.S.C. § 1203(c)(3)(B)[30], Plaintiff is entitled to recover, at his election, an award of statutory damages of not less than $2,500.00 and not more than $25,000.00 for each discrete violation of 17 U.S.C. § 1202(b). Claims under Chapter 12 of Title 17 are strictly exempt from the pre-registration limitations of 17 U.S.C. § 412, entitling Plaintiff to immediate statutory damages, actual damages, and statutory attorney's fees pursuant to 17 U.S.C. § 1203(b)(3)-(5).[30]

---

[29] Mango v. BuzzFeed, Inc., 970 F.3d 167, at pp. 171-172 (2d Cir. 2020): 'a defendant may be held liable under § 1202(b) for removing or altering CMI if the defendant knew or had reasonable grounds to know that its actions would induce, enable, facilitate, or conceal copyright infringement.'.

[30] United States Congress, Title 17 of the United States Code, Section 1203(c)(3)(B), at § 1203(c)(3)(B) (2026): 'At any time before final judgment is rendered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.'.

**COUNT IV: CONTRIBUTORY AND VICARIOUS COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

***(Against Defendants Fox Corporation and Porter Berry)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

At all relevant times, direct infringements of Plaintiff's exclusive rights under 17 U.S.C. § 106 were committed by broadcast personnel, production staff, and editorial writers operating within Fox News Network, LLC and Fox Nation.

Defendant Fox Corporation, as the ultimate parent entity and controlling corporate principal, and Defendant Porter Berry, as Vice President and Editor-in-Chief of Fox News Digital, are contributorily and vicariously liable for said infringements under the Copyright Act and binding Supreme Court authority in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)[31] and *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996).[32]

**Contributory Infringement.** Defendants Fox Corporation and Porter Berry possessed actual and constructive knowledge of the direct infringing activities across Fox News and Fox Nation, and materially contributed to, facilitated, induced, and enabled said infringements by providing the digital streaming infrastructure, approving syndicated paywall distribution budgets, maintaining web servers, and directing editorial coverage to

[30] United States Congress, Title 17 of the United States Code, Section 1203(c)(3)(B), at § 1203(c)(3)(B) (2026): 'At any time before final judgment is rendered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.'.

exploit Plaintiff's documentary footage. Under *Grokster*, 545 U.S. at 930[31], one who intentionally induces or encourages direct infringement is contributorily liable as an infringer.

**Vicarious Infringement.** Defendants Fox Corporation and Porter Berry possessed the legal right and practical ability to supervise, control, police, and halt the infringing broadcasts, paywalled streaming episodes (*Patriot Purge*), and digital articles, yet failed to exercise that supervisory authority. Furthermore, Defendants Fox Corporation and Porter Berry derived a direct, substantial financial benefit from the infringement, including paid Fox Nation subscription fees, increased television viewership, and programmatic advertising revenues directly tied to the exploitation of Plaintiff's footage. Under *Fonovisa*, 76 F.3d at 262[32], right and ability to supervise coupled with an obvious and direct financial interest establishes vicarious liability as a matter of law.

Defendants Fox Corporation and Porter Berry are jointly and severally liable with direct infringers for all actual damages, disgorgement of profits under 17 U.S.C. § 504(b)[25], statutory damages under 17 U.S.C. § 504(c)[26] and § 1203(c)(3)(B)[30], and statutory costs and attorney's fees under 17 U.S.C. § 505.[27]

---

[31] Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, at p. 930 (2005): 'one who intentionally induces or encourages direct infringement is liable as a contributory infringer, based on common law principles.'.

[32] Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259, at p. 262 (9th Cir. 1996): 'vicarious liability for copyright infringement exists when a party has the right and ability to supervise the infringing activity and an obvious and direct financial interest in the exploitation of copyrighted materials.'.

**COUNT V: DEFAMATION PER SE -- IMPUTATION OF VIOLENT FELONY CONDUCT**

**(UTAH COMMON LAW)**

***(Against All Defendants)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Defendants published, syndicated, and broadcasted to tens of millions of television viewers, digital subscribers, online readers, and social media followers multiple false, unprivileged, and defamatory factual statements concerning Plaintiff. Specifically, Defendants affirmatively branded Plaintiff as a violent *"Antifa leader,"* an armed *"left-wing instigator,"* a riotous operative who pointed a firearm at a journalist's head during a protest in Utah, and a violent extremist who orchestrated and executed a violent assault upon the United States Capitol, weaponizing Plaintiff's pirated documentary footage before tens of millions of viewers as what Defendants asserted was visual proof of treason and violent insurrection.

Said defamatory factual assertions were disseminated across nationwide linear broadcasts (*Fox News @ Night*, *America's Newsroom*, *Hannity*), paywalled streaming documentary programming (*Tucker Carlson Originals: Patriot Purge*), digital articles across FoxNews.com, and an institutional 4-wave corporate social media blitz directed to 29.4 million followers on X (@FoxNews).

The published statements are demonstrably, objectively, and irrefutably false. Plaintiff entered and remained within the Capitol premises solely in his capacity as an independent documentary video journalist to record historical events. Plaintiff has secured complete, unconditional legal exoneration-embodied in Presidential Proclamation 10887 and the D.C. Circuit's mandate vacating all underlying convictions *ab initio*.

Pursuant to binding Utah jurisprudence in *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[33], *Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995)[34], and *Jacob v. Bezzant*, 2009 UT 37, ¶ 21 (2009)[35], Defendants' published statements constitute defamation per se as a matter of law, in that they falsely charge Plaintiff with the commission of violent, infamous, and criminal acts (including treason, armed assault, brandishing a deadly weapon, and inciting insurrection). As articulated in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974)[36], there is no constitutional value in false statements of fact.

Defendants published and republished these defamatory falsehoods with constitutional actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)[37] and *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)[38]. Defendants possessed actual subjective knowledge of falsity, as confirmed by their own internal reporting admission wherein author Stephanie Pagones acknowledged that investigative sources

[33] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'publicly accusing an individual of committing crimes, fraud, or bad acts is capable of conveying a defamatory meaning and placing the person in a false light; affirmative defense privileges cannot defeat a defamation claim at the motion-to-dismiss stage when actual malice is sufficiently alleged.'.

[34] Russell v. Standard Corp., 898 P.2d 263, at p. 264 (1995): 'To state a claim for defamation under Utah law, a plaintiff must show: (1) the defendant published the statements concerning the plaintiff; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages.'.

[35] Jacob v. Bezzant, 2009 UT 37, at ¶ 21 (2009): 'Statements are defamatory per se if they charge the commission of a crime involving moral turpitude or impute conduct incompatible with the proper exercise of a lawful profession or business, and in such cases damages are presumed.'.

informed Fox News that Plaintiff was not affiliated with Antifa (**Exhibit 22**), yet Defendants deliberately suppressed said knowledge and systematically disseminated the fabricated narrative.

As a direct and proximate result of Defendants' per se defamatory publications, general damages are presumed *ipso jure* under Utah law; furthermore, Plaintiff has sustained catastrophic actual damages, including total professional ostracization, severe emotional distress, and enduring threats to his personal security and physical safety.

**COUNT VI: DEFAMATION PER SE -- IMPEACHMENT OF PROFESSIONAL INTEGRITY & TRADE FITNESS (UTAH COMMON LAW)**

***(Against All Defendants)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Defendants published and disseminated false, unprivileged statements of fact that directly impugned and impeached Plaintiff's professional fitness, integrity, and competence in his chosen profession and business as an independent videojournalist and documentary filmmaker.

[36] Gertz v. Robert Welch, Inc., 418 U.S. 323, at p. 340 (1974): 'There is no constitutional value in false statements of fact. Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues.'.

[37] New York Times Co. v. Sullivan, 376 U.S. 254, at pp. 279-280 (1964): 'The constitutional guarantees require, we think, a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.'.

[38] St. Amant v. Thompson, 390 U.S. 727, at p. 731 (1968): 'Reckless disregard... is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'.

Specifically, Defendants publicly asserted that Plaintiff was not a legitimate journalist but was merely *"posing as a journalist"* or using journalistic credentials as a *"cover"* to engage in violent insurrection and illicit political agitation. Defendants further asserted that Plaintiff's arm's-length documentary licensing agreements with global news networks (CNN and NBC) constituted the mercenary, criminal profiteering from domestic terrorism.

Under *Jacob v. Bezzant*, 2009 UT 37, ¶ 21 (2009)[35] and *Russell v. Standard Corp.*, 898 P.2d 263, 264 (Utah 1995)[34], statements that impute conduct incompatible with the proper exercise of a lawful profession, trade, or business constitute defamation per se, for which damages are presumed without proof of special harm.

Defendants published said professional defamations with constitutional actual malice under *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-280 (1964)[37], knowing that Plaintiff was an active, credentialed documentarian operating an independent media entity, and that major broadcast networks routinely contract for eyewitness freelance footage.

As a direct and proximate result of Defendants' unauthorized commercial use and broadcast of Plaintiff's proprietary footage without a license agreement, combined with Defendants' pervasive defamatory remarks, false light smears, and character assassination, Plaintiff suffered severe business loss, the commercial destruction and devastation of his independent media enterprise, profound reputational ruin throughout the broadcast journalism industry, and substantial compensatory, presumed, and general damages.

## COUNT VII: FALSE LIGHT INVASION OF PRIVACY (UTAH COMMON LAW)

***(Against All Defendants)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Under Utah common law as recognized in *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[39] and *West v. Thomson Newspapers*, 872 P.2d 999, 1007 (Utah 1994)[40], Defendants gave publicity to matters concerning Plaintiff that placed Plaintiff before the public in a false light, deliberately distorting Plaintiff's identity, conduct, and professional activities.

Specifically, Defendants perniciously mischaracterized Plaintiff's lawful, arm's-length commercial licensing covenants with global broadcasting networks (CNN and NBC) as the illicit, mercenary monetization of a violent insurrection; expropriated and weaponized qualitative excerpts of Plaintiff's copyrighted cinematographic Work within paywalled political polemics (*Patriot Purge*) and nationwide broadcasts as what they asserted was visual proof of treason to depict Plaintiff as a clandestine Antifa provocateur executing a violent false flag operation; and broadcasted demonstrably doctored, fabricated visual imagery-specifically an unauthenticated image bearing an interior door in the background falsely masqueraded as an official arrest booking mugshot and digitally

[39] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'publicly accusing an individual of committing crimes, fraud, or bad acts is capable of conveying a defamatory meaning and placing the person in a false light; affirmative defense privileges cannot defeat a defamation claim at the motion-to-dismiss stage when actual malice is sufficiently alleged.'.

[40] West v. Thomson Newspapers, 872 P.2d 999, at p. 1007 (1994): 'To establish a claim for false light, a plaintiff must show that: (1) the false light in which he was placed would be highly offensive to a reasonable person, and (2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'.

manipulated with artificially dilated ocular proportions juxtaposed against pirated documentary footage on *America's Newsroom* (**Exhibit 29**)-to deceive the public and generate an aura of menacing criminality.

Pursuant to controlling Utah jurisprudence enunciated in *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[41] and *West v. Thomson Newspapers*, 872 P.2d 999, 1007 (Utah 1994)[42], the highly distorted, synthetic public light in which Defendants cast Plaintiff constitutes an egregious, actionable intrusion that would be profoundly offensive to a reasonable person in Plaintiff's position, inasmuch as Defendants' pervasive broadcasts branded an independent documentarian as an armed insurrectionist, a treasonous conspirator, and a violent domestic extremist.

Pursuant to *Mathews v. McCown*, 2025 UT 34, ¶¶ 42-48 (2025)[43] and *West v. Thomson Newspapers*, 872 P.2d 999, 1007 (Utah 1994)[44], Defendants published, syndicated, and digitalized said false representations with constitutional actual malice, possessing subjective cognition of demonstrable falsity or, at a minimum, acting with reckless, high-degree awareness of probable falsity, deliberately disregarding their own verified newsroom reporting confirming Plaintiff's total lack of ideological or operational affiliation with Antifa.

[41] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'publicly accusing an individual of committing crimes, fraud, or bad acts is capable of conveying a defamatory meaning and placing the person in a false light...'.

[42] West v. Thomson Newspapers, 872 P.2d 999, at p. 1007 (1994): 'the false light in which he was placed would be highly offensive to a reasonable person...'.

[43] Mathews v. McCown, 2025 UT 34, at ¶¶ 42-48 (2025): 'affirmative defense privileges cannot defeat a defamation claim at the motion-to-dismiss stage when actual malice is sufficiently alleged.'.

As a direct, foreseeable, and proximate consequence of Defendants' tortious dissemination of false light publicity, Plaintiff has suffered acute and enduring psychological distress, catastrophic reputational devastation, universal public opprobrium, and irremediable economic disenfranchisement.

**COUNT VIII: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE (UTAH COMMON LAW / *ELDRIDGE V. JOHNDROW*)**

***(Against All Defendants)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Under the controlling framework established by the Utah Supreme Court in *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70, 345 P.3d 553[45], a claim for intentional interference with prospective economic advantage requires proof: (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) that the defendant did so by improper means; and (3) that the defendant's interference caused harm to the plaintiff.

At all relevant times, Plaintiff possessed existing and prospective economic relations with national and international media networks, documentary distribution platforms, and news agencies-including established commercial licensing relationships

[44] West v. Thomson Newspapers, 872 P.2d 999, at p. 1007 (1994): 'the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.'.

[45] Eldridge v. Johndrow, 2015 UT 21, at ¶ 70 (2015): 'a claim for intentional interference with prospective economic advantage requires a plaintiff to prove: (1) that the defendant intentionally interfered with the plaintiff's existing or potential economic relations; (2) that the defendant did so by improper means; and (3) that the defendant's interference caused harm to the plaintiff.'.

with CNN and NBC News, which had contracted to pay Plaintiff $35,000.00 each for documentary footage licensing-as well as potential economic relations with other major broadcasting outlets seeking licensing rights to Plaintiff's historic footage.

Defendants intentionally, purposely, and maliciously interfered with Plaintiff's existing and prospective economic relations. Defendants did so by *"improper means"* -defined under *Eldridge*, 2015 UT 21, ¶ 70[45] as conduct that was contrary to law, including common law torts and statutory violations. Specifically, Defendants deployed independent tortious and statutory improper means, encompassing: (a) Defamation Per Se charging Plaintiff with infamous felony crimes and impeaching his trade fitness; (b) False Light Invasion of Privacy; (c) intentional removal and alteration of Copyright Management Information in violation of 17 U.S.C. § 1202(b)[28]; and (d) predatory broadcasting designed to destroy Plaintiff's commercial market exclusivity without paying customary licensing consideration.

Because Plaintiff's intentional interference claim is anchored in the independent improper means of Defamation Per Se, False Light, and DMCA violations-requiring proof of extra elements including falsity, defamatory meaning, constitutional actual malice, and CMI alteration-the claim is qualitative different from copyright infringement and is strictly immune from federal copyright preemption under 17 U.S.C. § 301(a)[5] pursuant to *Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1543 (10th Cir. 1996).[46]

As a direct and proximate result of Defendants' intentional interference through improper means, Plaintiff's prospective licensing agreements were systematically destroyed, major networks refused to engage in prospective business relations with

Plaintiff, and Plaintiff sustained massive actual and consequential damages in an amount to be established at trial.

**COUNT IX: CIVIL CONSPIRACY (UTAH COMMON LAW / RESTATEMENT (SECOND) OF TORTS § 876)**

***(Against All Defendants)***

Plaintiff realleges and incorporates by reference each preceding paragraph of this Complaint as though set forth fully and verbatim herein.

Under Utah common law, a civil conspiracy requires: (1) a combination of two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result thereof.

Defendants Fox News Network, LLC, Fox Corporation, Tucker Carlson, Porter Berry, Shannon Bream, Kevin Corke, Sean Hannity, Danielle Wallace, Michael Ruiz, Laura Ingraham, Yael Halon, and John Roberts combined, conspired, and agreed among themselves to execute a concerted, institutional campaign of character assassination, commercial expropriation, and tortious interference against Plaintiff.

[46] Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, at p. 1543 (10th Cir. 1996): 'when a state law claim requires an extra element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim, the state law claim is not preempted under 17 U.S.C. § 301(a).'.

The object of said combination was unlawful: namely, to appropriate and weaponize Plaintiff's copyrighted footage without payment of licensing fees, to manufacture a sensationalized *"Antifa instigator"* false-flag narrative to divert public scrutiny, and to market and monetize Fox Nation's commercial paywall docuseries *Patriot Purge* through sensationalized character assassination.

Defendants had a meeting of the minds to accomplish this course of action, and in furtherance of said conspiracy committed multiple unlawful, overt acts across 2021, 2022, 2023, 2024, 2025, and 2026, including: (a) broadcasting pirated excerpts of Plaintiff's footage across linear cable; (b) locking Plaintiff's footage behind Fox Nation's paid subscriber paywall; (c) systematically cropping and removing Plaintiff's JAYDEN X CMI watermark; (d) coordinating a 4-wave corporate social media blitz across 29.4 million X followers; (e) publishing defamatory articles imputing violent felony crimes; and (f) broadcasting digitally distorted, unauthenticated images falsely masqueraded as criminal arrest mugshots to brand Plaintiff as a deranged extremist.

Pursuant to the concert-of-action principles recognized under Utah common law and Restatement (Second) of Torts § 876, each Defendant is jointly and severally liable for all tortious and unlawful acts committed by any co-conspirator in furtherance of the conspiracy, rendering all Defendants jointly and severally liable for all resulting general, compensatory, statutory, and punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in Plaintiff's favor and against Defendants, jointly and severally, granting the following legal, equitable, and declaratory relief:

1. An entry of a declaratory decree and judgment pursuant to 28 U.S.C. §§ 2201-2202 and 17 U.S.C. § 501 declaring that Defendants Fox News Network, LLC, Fox Corporation, Tucker Carlson, Porter Berry, Danielle Wallace, Michael Ruiz, and John Roberts have willfully, deliberately, and unlawfully infringed Plaintiff's exclusive copyright in the Work;
2. An entry of a declaratory decree and judgment pursuant to 17 U.S.C. § 1203 declaring that Defendants Fox News Network, LLC, Fox Corporation, John Roberts, and Porter Berry have unlawfully, knowingly, and willfully removed, cropped, and altered Plaintiff's Copyright Management Information in violation of 17 U.S.C. § 1202(b);
3. An award of actual damages sustained by Plaintiff alongside the full disgorgement and accounting of all gross revenues and illicit profits realized by Defendants attributable to copyright infringements pursuant to 17 U.S.C. § 504(b), or, at Plaintiff's timely election prior to final judgment, an award of statutory damages up to $150,000.00 for each discrete, willful post-registration infringement pursuant to 17 U.S.C. § 504(c)(2);
4. An award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3)(B) in the amount of not less than $2,500.00 and up to $25,000.00 for each discrete violation of 17 U.S.C. § 1202(b) committed by Defendants;

5. An award of full statutory costs, disbursements, and reasonable attorney's fees pursuant to 17 U.S.C. § 505 and 17 U.S.C. § 1203(b)(4)-(5);

6. An award of general, special, presumed, and compensatory damages against all Defendants, jointly and severally, for Defamation Per Se, False Light, Intentional Interference with Prospective Economic Advantage, and Civil Conspiracy in an amount to be proved and determined by the trier of fact at trial;

7. An award of exemplary and punitive damages against all Defendants, jointly and severally, in an amount determined by the trier of fact sufficient to punish Defendants' willful, malicious, wanton, and outrageous tortious conduct and to deter similar institutional journalistic malfeasance in the future;

8. An entry of permanent equitable injunctive relief pursuant to 17 U.S.C. § 502, 17 U.S.C. § 1203(b)(1), and Federal Rule of Civil Procedure 65 enjoining and restraining Defendants, their corporate affiliates, officers, agents, servants, employees, successors, licensees, assigns, and all persons acting in active concert or participation with them, from directly or indirectly reproducing, displaying, hosting, streaming, synchronizing, distributing, or otherwise exploiting the copyrighted Work, or any portion or derivative work thereof;

9. An affirmative mandatory injunction compelling Defendants to publish a prominent, unconditioned correction, retraction, and formal apology across all linear cable broadcasts, digital streaming portals, subscription channels, web platforms, and verified social media handles where the defamatory falsehoods, false light imagery, and infringing assets were disseminated; and

10. Such other, further, and different legal, equitable, or declaratory relief as this Court deems just, equitable, and proper.

DATED: September 14, 2026.

Respectfully submitted,

**John Earle Sullivan**

Plaintiff Pro Se

**SWORN VERIFICATION & STATUTORY DECLARATION UNDER 28 U.S.C. § 1746**

I, John Earle Sullivan, declare under penalty of perjury under the laws of the United States of America pursuant to **28 U.S.C. § 1746**[47] and Federal Rule of Civil Procedure 11(b) that:

1. I am the Plaintiff in the above-captioned civil action;
2. I have read the foregoing Complaint and possess direct personal knowledge of the facts, occurrences, and circumstances set forth herein;
3. All factual allegations, evidentiary representations, and statements of injury contained in this Complaint are true and correct to the best of my knowledge, information, and belief formed after an inquiry reasonable under the circumstances;
4. The financial declaration submitted in support of my Motion for Leave to Proceed *In Forma Pauperis* under 28 U.S.C. § 1915(a)(1) accurately and truthfully represents my complete financial status; and
5. This action is prosecuted in good faith, with zero malicious, frivolous, or vexatious intent, to vindicate my statutory and constitutional rights under law.

Executed on September 14, 2026, at Erda, Tooele County, State of Utah, within the District of Utah.

John Earle Sullivan

**John Earle Sullivan**

Plaintiff Pro Se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this September 14, 2026, a true and correct copy of the foregoing Verified Complaint for Copyright Infringement (17 U.S.C. § 501), Removal of Copyright Management Information (17 U.S.C. § 1202), Defamation Per Se, False Light, Intentional Interference with Prospective Economic Advantage, and Civil Conspiracy was submitted for filing with the Clerk of the Court for the United States District Court for the District of Utah. Because the Plaintiff is concurrently applying for Leave to Proceed *In Forma Pauperis* pursuant to 28 U.S.C. § 1915(a) and moving for Court-Directed Service by the United States Marshals Service pursuant to 28 U.S.C. § 1915(d) and Federal Rule of Civil Procedure 4(c)(3), formal personal service of process upon Defendants has not been executed and will be executed by the United States Marshals Service upon the Court's approval of the In Forma Pauperis application and issuance of summonses.

## SERVICE RECIPIENTS:

Fox News Network, LLC - Corporate Defendant

1211 Avenue of the Americas, New York, NY 10036

Email: katherine.meeks@foxnews.com

Fox Corporation - Corporate Defendant

1211 Avenue of the Americas, New York, NY 10036

Email: foxnewslegal@fox.com

[47] United States Congress, Title 28 of the United States Code, Section 1746, at § 1746 (2026): 'Wherever, under any law of the United States... any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration... such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration...'.

Porter Berry - VP & Editor-in-Chief of Fox News Digital
30 E 62nd St #8F, New York, NY 10065
Email: porter_berry@foxnews.com

Shannon Bream - Anchor/Host
2824 N Beechwood Cir, Arlington, VA 22207
Email: shannon.bream@fox.com

Kevin Corke - Reporter
400 North Capitol St NW, Washington, DC 20001
Email: kevin.corke@fox.com

Sean Hannity - Host, 'Hannity'
9 Sloans Curve Dr, Palm Beach, FL 33480
Tel: (256) 233-7539 | Email: sean.hannity@foxnews.com

Tucker Carlson - Host/Publisher
PO Box 173, Bryant Pond, ME 04219
Email: tucker.carlson@foxnews.com

Danielle Wallace - Senior Reporter
1211 Avenue of the Americas, New York, NY 10036
Email: danielle.wallace@fox.com

Michael Ruiz - Senior U.S. and World Reporter
1211 Avenue of the Americas, New York, NY 10036
Email: mruiz@fox.com

Laura Ingraham - Host, The Ingraham Angle
7475 Wisconsin Ave Ste 600, Bethesda, MD 20814
Email: lauraingraham@foxnews.com

John Roberts - Senior National News Anchor & Co-Anchor
400 North Capitol St NW, Washington, DC 20001
Email: robertsj@foxnews.com

Yael Halon - Reporter & Associate Editor, Fox News Digital
2713 Ave N, Brooklyn, NY 11210
Tel: (347) 628-4434 | Email: halon@foxnews.com

John Earle Sullivan

**John Earle Sullivan**

Plaintiff Pro Se

# ADDENDUMS

---

## ADDENDUM A

### U.S. Const. amend. I - Freedom of Speech and Press

*U.S. Const. amend. I - Freedom of Religion, Speech, Press, Assembly, and Petition*

*Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.*

---

## ADDENDUM B

### U.S. Const. amend. XIV, § 1 - Due Process and Equal Protection

*U.S. Const. amend. XIV, § 1 - Due Process and Equal Protection*

*All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.*

---

## ADDENDUM C

### 17 U.S.C. § 101 - Definitions (Work Made for Hire)

*17 U.S.C. § 101 - Definitions*

*A "work made for hire" is-*

*(1) a work prepared by an employee within the scope of his or her employment; or*

*(2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.*

---

## ADDENDUM D

### 17 U.S.C. § 106 - Exclusive Rights in Copyrighted Works

*17 U.S.C. § 106 - Exclusive Rights in Copyrighted Works*

*Subject to sections 107 through 122, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:*

*(1) to reproduce the copyrighted work in copies or phonorecords;*

*(2) to prepare derivative works based upon the copyrighted work;*

*(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;*

*(4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;*

*(5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and*

*(6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.*

---

## ADDENDUM E

### 17 U.S.C. § 410 - Registration of Claim and Issuance of Certificate

*17 U.S.C. § 410* **-** *Registration of Claim and Issuance of Certificate*

*(a) When, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall register the claim and issue to the applicant a certificate of registration under the seal of the Copyright Office. The certificate shall contain the information given in the application, together with the number and effective date of the registration.*

*(b) In any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall refuse registration and shall notify the applicant in writing of the reasons for such refusal.*

*(c) In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.*

*(d) The effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to have been acceptable for registration, have all been received in the Copyright Office.*

## ADDENDUM F

**17 U.S.C. § 412 - Registration as Prerequisite to Certain Remedies for Infringement**

*17 U.S.C. § 412* **-** *Registration as Prerequisite to Certain Remedies*

*In any action under this title, other than an action brought for a violation of the rights of the author under section 106A(a), an action for infringement of the copyright of a work that has been preregistered under section 408(f) before the commencement of the infringement and that has an effective date of registration not later than the earlier of 3 months after the first publication of the work or 1 month after the copyright owner has learned of the infringement, or an action instituted under section 411(c), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for-*

*(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or*

*(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.*

---

## ADDENDUM G

**17 U.S.C. § 501 - Infringement of Copyright**

*17 U.S.C. § 501* **-** *Infringement of Copyright*

*(a) Anyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 or of the author as provided in section 106A(a), or who imports copies or phonorecords into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be. For purposes of this chapter (other than section 506), any reference to this title or to a section thereof shall be deemed to include a reference to the related or corresponding provision of the United States Common Law or statutory law of any territory or possession of the United States.*

*(b) The legal or beneficial owner of an exclusive right under a copyright is entitled, subject to the requirements of section 411, to institute an action for any infringement of that particular right committed while he or she is the owner of it. The court may require such owner to serve written notice of the action with a copy of the complaint upon any person shown, by the records of the Copyright Office or otherwise, to have or claim an interest in the copyright, and shall require that such notice be served upon any person whose interest may be affected by a judgment in the case.*

## ADDENDUM H

**17 U.S.C. § 504 - Damages and Profits**

*17 U.S.C. § 504* **-** *Damages and Profits*

*(a) In General.*-*Except as otherwise provided by this title, an infringer of copyright is liable for either*-

*(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or*

*(2) statutory damages, as provided by subsection (c).*

*(b) Actual Damages and Profits.*-*The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.*

*(c) Statutory Damages.*-

*(1) Except as provided by clause (2) of this subsection, the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just. For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work.*

*(2) In a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000. In a case where the infringer sustains the burden of proving, and the court finds, that such infringer was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.*

## ADDENDUM I

**17 U.S.C. § 505 - Remedies for Infringement: Costs and Attorney's Fees**

*17 U.S.C. § 505* **-** *Remedies for Infringement: Costs and Attorney's Fees*

*In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.*

---

## ADDENDUM J

**28 U.S.C. § 1331 - Federal Question Jurisdiction**

*28 U.S.C. § 1331* - *Federal Question*

*The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.*

---

## ADDENDUM K

**28 U.S.C. § 1338(a) - Patents, Copyrights, and Trademarks**

*28 U.S.C. § 1338(a)* - *Patents, Copyrights, and Trademarks*

*The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases.*

---

## ADDENDUM L

**28 U.S.C. § 1367(a) - Supplemental Jurisdiction**

*28 U.S.C. § 1367(a)* - *Supplemental Jurisdiction*

*Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.*

---

## ADDENDUM M

**28 U.S.C. § 1391(b)(2) - Venue Generally**

*28 U.S.C. § 1391(b)(2)* - *Venue Generally*

*Venue in General.*-*A civil action may be brought in*-

*(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated.*

## ADDENDUM N

### 28 U.S.C. § 1746 - Unsworn Declarations Under Penalty of Perjury

*28 U.S.C. § 1746* **-** *Unsworn Declarations Under Penalty of Perjury*

*Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same (other than a deposition, or an oath of office, or an oath required to be taken before a specified official other than a notary public), such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:*

*(2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".*

---

## ADDENDUM O

### 17 U.S.C. § 1202 - Integrity of Copyright Management Information

*17 U.S.C. § 1202* **-** *Integrity of Copyright Management Information*

*(a) False Copyright Management Information.-No person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement-*

*(1) provide copyright management information that is false, or*

*(2) distribute or import for distribution copyright management information that is false.*

*(b) Removal or Alteration of Copyright Management Information.-No person shall, without the authority of the copyright owner or the law-*

*(1) intentionally remove or alter any copyright management information,*

*(2) distribute or import for distribution copyright management information knowing that the copyright management information has been removed or altered without authority of the copyright owner or the law, or*

*(3) distribute, import for distribution, or publicly perform works, copies of works, or phonorecords, knowing that copyright management information has been removed or altered without authority of the copyright owner or the law,*

*knowing, or, with respect to civil remedies under section 1203, having reasonable grounds to know, that it will induce, enable, facilitate, or conceal infringement of any right under this title.*

*(c) Definition.-As used in this section, the term "copyright management information" means any of the following information conveyed in connection with copies or phonorecords of a work or performances or displays of a work, including in digital form, except that such term does not include any personally identifying information about a user*

*of a work or of a copy, phonorecord, performance, or display of a work:*

*(1) The title and other information identifying the work, including the information set forth on a notice of copyright.*

*(2) The name of, and other identifying information about, the author of a work.*

*(3) The name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright.*

---

## ADDENDUM P

### 17 U.S.C. § 1203 - Civil Remedies for Violations of Sections 1201 and 1202

*17 U.S.C. § 1203 - Civil Remedies*

*(a) Civil Actions.-Any person injured by a violation of section 1201 or 1202 may bring a civil action in an appropriate United States district court for such violation.*

*(b) Powers of the Court.-In an action brought under subsection (a), the court-*

*(1) may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation;*

*(2) at any time while an action is pending, may order the impounding of any device or product that is in the custody or control of the alleged violator and that the court has reasonable cause to believe was involved in a violation;*

*(3) may award damages under subsection (c);*

*(4) in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof;*

*(5) in its discretion may award reasonable attorney's fees to the prevailing party.*

*(c) Award of Damages.-*

*(1) In General.-Except as otherwise provided in this title, a person committing a violation of section 1201 or 1202 is liable for either-*

*(A) the actual damages and any additional profits of the violator, as provided in paragraph (2), or*

*(B) statutory damages, as provided in paragraph (3).*

*(3) Statutory Damages.-*

*(B) At any time before final judgment is rendered, a complaining party may elect to recover an award of statutory damages for each violation of section 1202 in the sum of not less than $2,500 or more than $25,000.*

# INDEX OF APPENDED ENCLOSURES

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-1** | Official Certificate of Registration issued by the United States Copyright Office for Plaintiff's audiovisual work titled 'The Insurrection of The United States Capitol' (Registration Number PA 2 - 585 - 152), establishing Plaintiff's legal ownership and copyright interest in the subject motion picture. |
| **EXHIBIT-2** | Full, complete, and unconditional Presidential Pardon issued by President Donald J. Trump on January 20, 2025 (Proclamation 10887), granting full legal exoneration to individuals charged in connection with the events of January 6, 2021, including Plaintiff. |
| **EXHIBIT-3** | Official Pardon Certificate issued by the Office of the Pardon Attorney, United States Department of Justice, certifying the presidential pardon and complete executive exoneration of John Earle Sullivan under Proclamation 10887. |
| **EXHIBIT-4** | Formal Order and Mandate of the United States Court of Appeals for the District of Columbia Circuit (Case No. 24 - 3051) entered on February 27, 2025, vacating the district court's judgment of conviction against Plaintiff and remanding with instructions to dismiss. |
| **EXHIBIT-5** | Order of Dismissal entered by the Honorable Royce C. Lamberth, United States District Court for the District of Columbia, in Case No. 1:21 - cr - 78 - RCL - 1 on March 4, 2025, dismissing the entire criminal action against Plaintiff as moot following vacatur. |
| **EXHIBIT-6** | Executed commercial Non - Exclusive License Agreement between John Earle Sullivan and Cable News Network, Inc. (CNN) dated January 6, 2021, establishing the baseline fair market licensing fee of $35,000.00 for broadcast rights to Plaintiff's eyewitness video footage. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
|---|---|
| **EXHIBIT-21** | High - resolution visual ledger archive capture of Fox News digital article authored by Danielle Wallace (published November 16, 2023), establishing concurrent defamatory branding of Plaintiff as a 'left - wing, anti - establishment activist' and 'inciter' alongside the unauthorized reproduction and commercial exploitation of multiple extracted frames of Plaintiff's copyrighted documentary footage stamped with the visible on - screen 'JAYDEN X' watermark. |
| **EXHIBIT-22** | Fox News website article written by Stephanie Pagones published January 15, 2021 titled 'Left - wing activist seen at Capitol wore gas mask, said he had knife during riot: feds', utilizing John Earle Sullivan's copyrighted video screengrab with JAYDEN X watermark, while containing the network's contemporaneous admission that 'Sources told Fox News Sullivan is not known to be affiliated with Antifa'. |
| **EXHIBIT-29** | High - resolution broadcast screen capture from Fox News America's Newsroom (January 15, 2021, 10:42 AM ET) establishing nationwide broadcast of Plaintiff's copyrighted footage stamped 'YOUTUBE / JAYDEN X' side - by - side with Mike Huckabee and an artificially manipulated, distorted mugshot image of Plaintiff with enlarged, bulging eyes. |
| **EXHIBIT-35** | Visual ledger screen capture of Fox Nation Episode 3 streaming player establishing commercial paywalled display of Plaintiff's proprietary Speaker's Lobby shooting footage carrying the visible on - screen watermark to promote Fox One subscriptions. |
| **EXHIBIT-36** | Full - page forensic screenshot of the official @FoxNews profile on X (Twitter) documenting corporate verification status, official biography, and a massive broadcast reach of 29,409,759 active followers (29.4M followers). |
| **EXHIBIT-37** | High - resolution visual ledger capture of Fox News digital article authored by Michael Ruiz (published January 14, 2021, updated January 15, 2021), establishing nationwide digital defamation labeling Plaintiff a 'left - wing activist' and 'BLM activist' while concurrently reproducing, displaying, and commercially distributing three distinct extracted frames of Plaintiff's copyrighted documentary video footage prominently bearing the on - screen 'JAYDEN X' watermark without license or consent. |

| IDENTIFIER | EVIDENTIARY DESCRIPTION & CONTEXT |
| --- | --- |
| **EXHIBIT-43** | High - resolution broadcast screen capture extracted from Fox Nation's Tucker Carlson Originals: Patriot Purge: Part 1 master video file, establishing commercial broadcast of Plaintiff's copyrighted Capitol balcony/terrace video footage displaying the on - screen JAYDENX watermark. |
| **EXHIBIT-44** | Official visual ledger capture of Fox Nation streaming series catalog page for Tucker Carlson Originals: Patriot Purge, documenting commercial paywall gating and subscriber acquisition prompts ('Join Fox Nation Now!', 'Get Started') for Episodes 1 through 3. |

# EXHIBIT 1

*COPYRIGHT CERT PA 2 585 152*

Library of Congress
United States Copyright Office
101 Independence Avenue SE
Washington, DC 20559

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

Return if not delivered within 5 days

FIRST-CLASS

U.S. OFFICIAL MAIL PENALTY FOR PRIVATE USE $300
US POSTAGE PITNEY BOWES
ZIP 20500 $ 000.74[0]
02 7H
0002124623 MAY 26 2026

Insurgence USA
John Earle Sullivan
1221 W Erda Way
Erda, UT 84074 United States

840748581 RC01

**Registration #:** PA0002585152
**Service Request #:** 1-15107599638

Insurgence USA
John Earle Sullivan
1221 W Erda Way
Erda, UT 84074 United States

# Certificate of Registration

This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code,* attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

**Registration Number**
**PA 2-585-152**
**Effective Date of Registration:**
February 25, 2026
**Registration Decision Date:**
May 21, 2026

## Title

**Title of Work:** The Insurrection of The United States Capitol

## Completion/Publication

**Year of Completion:** 2021
**Date of 1st Publication:** January 06, 2021
**Nation of 1st Publication:** United States

## Author

- **Author:** John Earle Sullivan
  **Pseudonym:** Jayden X
  **Author Created:** entire motion picture
  **Citizen of:** United States
  **Domiciled in:** United States
  **Year Born:** 1994

## Copyright Claimant

**Copyright Claimant:** John Earle Sullivan
1221 W Erda Way, Erda, UT, 84074, United States

## Rights and Permissions

**Name:** John Earle Sullivan
**Email:** johnearles30@gmail.com
**Telephone:** (435)841-7258
**Address:** 1221 W Erda Way
Erda, UT 84074 United States

## Certification

**Name:** John Earle Sullivan
**Date:** February 25, 2026

---

# E X H I B I T 2

*PRESIDENTIAL PARDON PROCLAMATION 10887*

Menu

Search

Verified with Pardon Attorney's Office and USAO in Washington DC. No Warrant will be issued. 1/20/2025

KATHY WILLIAMS

Digitally signed by KATHY WILLIAMS
Date: 2025.01.20 21:34:18 -06'00'

PRESIDENTIAL ACTIONS

# GRANTING PARDONS AND COMMUTATION OF SENTENCES FOR CERTAIN OFFENSES RELATING TO THE EVENTS AT OR NEAR THE UNITED STATES

# CAPITOL ON JANUARY 6, 2021

January 20, 2025

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

This proclamation ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation.

Acting pursuant to the grant of authority in Article II, Section 2, of the Constitution of the United States, I do hereby:

(a) commute the sentences of the following individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, to time served as of January 20, 2025:

- Stewart Rhodes
- Kelly Meggs
- Kenneth Harrelson
- Thomas Caldwell
- Jessica Watkins
- Roberto Minuta
- Edward Vallejo
- David Moerschel
- Joseph Hackett

- Ethan Nordean
- Joseph Biggs
- Zachary Rehl
- Dominic Pezzola
- Jeremy Bertino

(b) grant a full, complete and unconditional pardon to all other individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021;

The Attorney General shall administer and effectuate the immediate issuance of certificates of pardon to all individuals described in section (b) above, and shall ensure that all individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021, who are currently held in prison are released immediately. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

I further direct the Attorney General to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021. The Bureau of Prisons shall immediately implement all instructions from the Department of Justice regarding this directive.

IN WITNESS WHEREOF, I have hereunto set my hand this twentieth day of January, in the year of our Lord two thousand twenty-five, and of the Independence of the United States of America the two hundred and forty-ninth.

News

Administration

Issues

THE WHITE HOUSE

1600 Pennsylvania Ave NW
Washington, DC 20500

THE WHITE HOUSE

WH.GOV

Copyright

Privacy

# EXHIBIT 3

*DOJ PARDON CERTIFICATE ID319255*

# Donald J. Trump

***President of the United States of America***

# Certificate of Pardon

***John Earle Sullivan***

was pardoned by the Presidential Proclamation of January 20, 2025. The pardon applies only to convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021.

As directed by the Proclamation of Pardon and in witness whereof, the Office of the Pardon Attorney has caused the seal of the Department of Justice to be affixed below and issues this certificate of pardon to the named person.




*Done at the City of Washington, District of Columbia, on February 7, 2025.*

ID319255

# EXHIBIT 4

*DC CIRCUIT VACATUR MANDATE*

# United States Court of Appeals
FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

**No. 24-3051** **September Term, 2024**

**1:21-cr-00078-RCL-1**

**Filed On:** February 27, 2025

United States of America,

Appellee

v.

John Earle Sullivan,

Appellant

**BEFORE:** Childs, Pan, and Garcia, Circuit Judges

**O R D E R**

Upon consideration of the unopposed motion to vacate convictions and remand for dismissal, it is

**ORDERED** that the judgment of the district court be vacated and the case be remanded with instructions to dismiss the case as moot. See United States v. Schaffer, 240 F.3d 35, 37–38 (D.C. Cir. 2001) (en banc).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to issue the mandate forthwith to the district court.

**Per Curiam**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Selena R. Gancasz
Deputy Clerk

# E X H I B I T 5

*DISTRICT COURT DISMISSAL ORDER DKT 164*

Case 1:21-cr-00078-RCL Document 176 Filed 03/04/25 Page 1 of 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

JOHN EARLE SULLIVAN,

*Defendant.*

Case No. 1:21-cr-78-RCL-1

# ORDER

Upon consideration of the D.C. Circuit's Order of February 27, 2025, No. 24-3051, it is hereby **ORDERED** that the case is **DISMISSED AS MOOT**.

**SO ORDERED**

Date: March 4, 2025

Royce C. Lamberth
United States District Judge

# EXHIBIT 6

*CNN LICENSING AGREEMENT*

**NON-EXCLUSIVE LICENSE AGREEMENT**

Licensor: **John Sullivan**
Email Address: 213 Civic Center Drive Apt 169 Sandy Utah 84070
Business Address:
City/State: Sandy, Utah
Telephone Number: 8013861049

This Agreement is made and entered into this on **6th day of January,2021**, by and between Licensor and Cable News Network, Inc. ("CNN").

1. GRANT OF RIGHTS. For Thirty Five Thousand dollars ($35,000), the receipt and sufficiency of which are hereby acknowledged, Licensor hereby grants to CNN a non-exclusive license to use the materials described as follows: **'Eyewitness video of the shooting at Capitol Hill 01/06/2021"** (collectively, the "Materials") for use in accordance with the terms of this Agreement. The license granted hereunder includes the perpetual, worldwide right to edit, telecast, rerun, reproduce, use, print and otherwise exploit the Materials, or any portion thereof in any manner and in any medium or forum, whether now known or hereafter devised, excluding distribution to affiliates worldwide. The license is granted for usage starting on **January 6, 2021 until January 13, 2021.**

2. REPRESENTATIONS AND WARRANTIES. Licensor represents and warrants to CNN that Licensor has the full legal right, power and authority to grant to CNN the license provided for herein, that it owns or controls the complete exhibition and other rights to the Materials for the purposes contemplated in this Agreement and that neither the Materials nor the exercise of the rights granted herein shall infringe upon or violate the right of privacy or right of publicity of, or constitute a libel or slander against, or violate any common law or any other right of, any person or entity.

3. INDEMNIFICATION. Licensor shall indemnify, defend and hold harmless CNN, its parent and affiliated companies, its and their licensees, successors and assigns, and each of its and their officers, agents and employees from all third party claims arising from the breach of the representations and warranties.

4. GOVERNING LAW. This Agreement shall be governed by the laws of the State of Georgia.

Accepted for Licensor:

Recoverable Signature

X

John Sullivan
John Sullivan
Signed by: 3b1ec8ed-8d1b-4078-bf9a-982099e3e27e

Name: John Sullivan

Title:

# EXHIBIT 21

*FOX NEWS DANIELLE WALLACE DEFAMATORY ARTICLE & WATERMARKED FOOTAGE EXTRACTION*




CAPITOL PROTESTS

# DOJ accuses left-wing activist of inciting Trump supporters on Jan. 6

Prosecutors say John Earle Sullivan 'came to engage in chaos' at US Capitol

By Danielle Wallace | Fox News

Published November 18, 2023 5:03pm EST




**Ex-FBI agent: We need to focus on terrorists, not January 6 misdemeanors**

'Outnumbered' panelists weigh in as Israel faces a barrage of rocket attacks from Gaza and as concerns grow worldwide over terror attacks

NEW You can now listen to Fox News articles!

The U.S. Department of Justice accused a man, whom prosecutors have painted as a left-wing, anti-establishment activist, of inciting supporters of former President Donald Trump on January 6, 2021.

At the conclusion of the trial against 29-year-old John Earle Sullivan in Washington, D.C., federal prosecutors outlined how he allegedly incited the mob of rioters inside the U.S. Capitol.

Sullivan claimed to have been a journalist who only followed the crowd to record the historic event. He captured video of the shooting of Ashli Babbitt, an Air Force veteran, who was fatally struck trying to enter the House Speaker's lobby by a bullet fired by Capitol Police officer Lt. Michael Byrd.

"It does not matter whether Sullivan was holding a camera to record his crimes. He incited the mob at every step. He knew why he was there that day. He wanted to tear it all down," Assistant U.S. Attorney Michael Barclay told jurors during closing arguments Wednesday, according to NBC News.

Prosecutors also presented a call that Sullivan – the leader of an organization called Insurgence USA, through which he organizes protests – had with members of his Discord channel after January 6 during which he bragged about his actions. "I brought my megaphone to instigate s—," Sullivan said on the call, added that he wanted to "make those Trump supporters f— s— up."

**LEFT-WING ACTIVIST CHARGED IN CAPITOL RIOT AFTER SAYING HE WAS JUST THERE TO 'DOCUMENT'**



John Sullivan was arrested in Utah on January 6-related charges. (Tooele County Sheriff's Office)

On January 6, 2021, Sullivan, who is from Utah, said he was in D.C. again to film the "Stop the Steal" march. He has claimed that he was at the U.S. Capitol only to document and report it, telling federal agents he was an activist and journalist who filmed protests and riots, but admitted that he did not have any press credentials.

"Everything that came out of his mouth was a ploy," Assistant U.S. Attorney Rebekah Lederer told jurors.

Of Sullivan's own testimony, she said the only thing more offensive was his "request for you to believe it."

"He came to engage in chaos," Lederer told the courtroom.

The jury also saw multiple videos of Sullivan's actions at the Capitol that day.




Proscutors showed video allegedly captured by John Sullivan on January 6, 2021. (FBI)

Federal prosecutors said that Sullivan was captured in one video from inside the Capitol on January 6, telling the crowd, "We gotta get this sh** burned." Among other things, Sullivan is heard saying, "it's our house mother***ers" and "we are getting this shi**" More footage showed Sullivan, who had a ballistic vest and gas masks, join a crowd trying to open doors to another part of the Capitol guarded by law enforcement officers. According to the indictment, Sullivan can be heard on the video telling other individuals in the crowd, "There's officers at the door."

Less than two minutes later, while officers are still at the doors and as others yell to break the glass windows in them with various objects, Sullivan, also known as Jayden X, can be heard saying, "Hey guys, I have a knife. I have a knife. Let me up," according to federal prosecutors. However, Sullivan never made it to the door.

**FEDS SEIZE $90K FROM SUPPOSED LEFT-WING ACTIVIST WHO SOLD FOOTAGE OF CAPITOL RIOT**

"I was only observing," Sullivan testified in court. "I followed the crowd. I'm there to document."




Screengrab of video allegedly captured by John Sullivan at the U.S. Capitol. (FBI)

"I don't remember bringing a knife specifically," he said of the video. "I'm not sure if that's a knife."

His defense lawyer, Steven Kiersh, categorized Sullivan's remarks as "just words," noting that he had not been in possession of any matches or lighter fluid.

"His intent was not to burn the place down," Kiersh told jurors. "His intent was to film."

Sullivan was arrested in Utah on January 14, 2021, and charged through a federal complaint with one count of knowingly entering or remaining in any restricted building or grounds without lawful authority, one count of violent entry and disorderly conduct on Capitol grounds and one count of interfering with law enforcement engaged in the lawful performance of their official duties incident to and during the commission of civil disorder.

Jurors were expected to start deliberating as soon as Thursday.

Prosecutors are also seeking the forfeiture of more than $90,000 that Sullivan made from selling video of the January 6 riot, WUSA reported.

Sullivan is said to have also attended Black Lives Matter and Proud Boys events in the past.

**CLICK HERE TO GET THE FOX NEWS APP**

The indictment says that Sullivan was captured on video shared to YouTube in July 2020 – following the death of George Floyd – telling protesters over a microphone in Washington, D.C., "We need to burn this sh** down," "We got to rip Trump out of office... F***ing pull him out of that sh**... we ain't waiting until the next election...we're about to go get that mother***er," according to federal prosecutors. The indictment says that Sullivan is then seen leading the crowd in a chant of "It's time for a revolution."

Danielle Wallace is a Breaking News Editor for Fox News Digital, serving as a critical newsroom playmaker at the intersection of major historic political events and the age of AI.

Story tips can be sent to danielle.wallace@fox.com and on X: @danimwallace




More from Politics
10 mins ago — ICE calls out 'depraved freak' illegal immigrant deported after heinous crime in Dem-run state
59 mins ago — DOJ opens new pathway to restore federal gun rights for certain barred individuals
1 hour ago — US military bases are 'ill-equipped' to stop drone swarms, top commander reveals after Rubio's UAP warning
2 hours ago — House Republican suggests Sen Darline Graham is an 'ally' for the 'swamp'

FOX NEWS POLITICS
Fox News Politics
Get the latest updates on the Trump administration and Congress, exclusive interviews and more Fox News politics content.
Arrives Weekdays
By entering your email and clicking the Subscribe button, you agree to the Fox News Privacy Policy and Terms of Use, and agree to receive content and promotional communications from Fox News. You understand that you can opt-out at any time.
Subscribe

Related Topics

Capitol Protests | Antifa | Washington DC | Justice Department | CRIME



This material may not be published, broadcast, rewritten, or redistributed. ©2025 FOX News Network, LLC. All rights reserved.

# E X H I B I T 2 2

*FOX NEWS STEPHANIE PAGONES DEFAMATORY ARTICLE & ANTIFA DISCLAIM ADMISSION*

## Recommended



**Hegseth ends hopes for Ukraine to join NATO**



**Dems lack 'substance' in inflation messaging: Harold Ford, Jr.**



**Chicago gives inside look at 'gift room'**



**Man with long criminal history wanted for allegedly groping young...**



**CBP reports 93% drop in daily 'gotaways' since start of Trump...**



**Navy fighter jet crashes into San Diego Bay**



**Kurt Volker says ending the war in Ukraine is about 'deterring Russia...**



**Attendees speak out as Worcester, Massachusetts votes to...**



**White House says a 'constitutional crisis' is unfolding 'within our...**



**Karoline Leavitt defends Elon Musk, DOGE: 'I brought receipts'**



**White House says**

American, 2 others released from Belarus...




Kayleigh McEnany: Media, Dems stoking fear with 'constitutional crisi...




Sen. Blackburn says Dems are 'losing it' over DOGE waste cuts




Anti-DOGE protesters gather in sleepy West Virginia city




Sharon Landry launches 'Love One Louisiana' in the wake of the New...




2 homeless Detroit children freeze to death while sleeping in van...




Ukraine regaining pre-2014 borders is 'unrealistic objective,'...




'Fighting back in a big way': California mayor battles with city council...




Louisiana students seeing improved test scores by 'going back to...




Daily 'gotaways' at southern border plummet under Trump...

---

CAPITOL PROTESTS

# Left-wing activist seen at Capitol wore gas mask, said he had knife during riot: feds

He allegedly told people at Capitol he had a knife

By **Stephanie Pagones** · **Fox News**

Published January 15, 2021 11:33am EST




**Feds warn violent extremism likely to surge in 2021 as Capitol, statehouses are fortified for inauguration**

The FBI is preparing for a violent extremism surge ahead of Inauguration Day; national security analyst Dr. Rebecca Grant offers insight.

---

The self-described left-wing activist recently arrested for allegedly taking part in the storming of the U.S. Capitol – later claiming he was there to "document" it – allegedly wore a gas mask and had a knife at the time of the siege, court papers show.

John "Jayden X" Sullivan is due to appear in court at 4 p.m. local time Friday in connection with charges for civil disorder, violent entry or disorderly conduct and entering a restricted building or grounds.

**LEFT-WING ACTIVIST CHARGED IN CAPITOL RIOT AFTER SAYING HE WAS JUST THERE TO 'DOCUMENT'**

The 26-year-old self-described journalist and activist was arrested Thursday and has been in the custody of Toeele County, Utah, authorities, officials previously said. Sources told Fox News Sullivan is not known to be affiliated with Antifa.



**John Sullivan (Toeele County Sheriff's Office) (Toeele County Sheriff's Office)**

In addition to the ballistic vest Sullivan was previously reported to have worn while inside the Capitol, court papers show he also wore a gas mask and claimed to have had a knife.

Sullivan, who filmed his time in the federal building – including the fatal shooting of California Air Force veteran Ashli Babbitt – later shared the footage with authorities.

**BLM ACTIVIST INSIDE CAPITOL CLAIMS HE WAS 'DOCUMENTING' RIOTS, ONCE SAID 'BURN IT ALL DOWN'**

In one clip, Sullivan can be heard saying: "Hey guys, I have a knife. I have a knife. Let me up," court documents state.

In one video, Sullivan can allegedly be heard cheering on the crowd as they broke through the final barricade before the Capitol and saying: "We did this together. ... We are all a part of history."

In at least two encounters, Sullivan can be heard on video telling officers to stand down so they don't get hurt and saying "the people have spoken," according to an affidavit.




Screengrab of video allegedly captured by John Sullivan (FBI) (FBI)

Sullivan, who founded activist group Insurgence USA, told Rolling Stone he was acting in such a way because he "had to relate to these people."

He continued: "And build trust in the short amount of time I had there to get where I need to go … to the front of the crowd

to see the dynamic between the police and the protesters, because nobody wants to see the backs of people's heads from a far-off distance."

He told Fox News was at the Capitol siege to "document" the events, and said he frequently attends and films protests.

"As far as being able to understand who is in the crowd, based on being around protests a lot … I didn't see any people who were originally at BLM protests," he told Fox News at the time.

**CLICK HERE TO GET THE FOX NEWS APP**

He could not be reached for comment following his arrest.

Sullivan was also charged with rioting and criminal mischief on July 13 following a June protest in Provo that resulted in an SUV driver being shot while driving through the two opposing groups. The case is still pending.

*Fox News' Michael Ruiz and Jake Gibson contributed to this report, as well as The Associated Press.*

---

Stephanie Pagones is a Digital Reporter for FOX Business and Fox News. Story tips can be sent to stephanie.pagones@fox.com and on Twitter: @steph_pagones.

**U.S.**
- Crime
- Military
- Education
- Terror
- Immigration
- Economy
- Personal Freedoms
- Fox News Investigates
- Digital Originals

**Politics**
- Executive
- Senate
- House
- Judiciary
- Foreign Policy
- Polls
- Elections

**World**
- U.N.
- Conflicts
- Terrorism
- Disasters
- Global Economy
- Environment
- Religion
- Scandals

**Opinion**

**Media**
- FOX Nation Coverage

**Entertainment**
- Celebrity News
- Country Music
- Royals
- Game Shows
- Couples
- Exclusives

**Sports**
- Super Bowl LIX
- Daytona 500
- NFL
- College Football
- MLB
- NBA
- NHL
- Golf
- Tennis
- Soccer
- UFC
- WWE

**Lifestyle**
- Health
- Food & Drink
- Auto
- Travel & Outdoors
- Real Estate
- House & Home
- Fitness & Well-being
- Style & Beauty
- Family
- Faith

**Deals**

**FOX Business**
- Personal Finance
- Economy
- Markets
- Watchlist
- Lifestyle
- Real Estate
- Tech

**Science & Tech**
- Air & Space
- Security
- Innovation
- Video Games
- Military Tech
- Planet Earth
- Wild Nature

**Games**
- Daily Crossword Puzzle
- Crazy Crystals Match 3 Game
- Word Search
- Mini Crossword Puzzle
- Stack and Match Block Puzzle
- 5 Across the Letter Word Game

**Watch Live**
- FOX News Shows
- Programming Schedule
- On Air Personalities
- Full Episodes
- Show Clips
- News Clips

**About**
- Contact Us
- Careers
- Fox Around the World
- Advertise With Us
- Media Relations
- Corporate Information
- Compliance

**Apps & Products**
- FOX News Go
- FOX Weather
- FOX Nation
- FOX Noticias
- FOX News Shop
- FOX News Radio
- Outkick
- Newsletters
- Podcasts

**U.S.**
- Crime
- Military
- Education
- Terror
- Immigration
- Economy
- Personal Freedoms
- Fox News Investigates
- Digital Originals

**Politics**
- Executive
- Senate
- House
- Judiciary
- Foreign Policy
- Polls
- Elections

**World**
- U.N.
- Conflicts
- Terrorism
- Disasters
- Global Economy
- Environment
- Religion
- Scandals

**Opinion**

**Media**
- FOX Nation Coverage

**Entertainment**
- Celebrity News
- Country Music
- Royals
- Game Shows
- Couples
- Exclusives

**Sports**
Super Bowl LIX
Daytona 500
NFL
College Football
MLB
NBA
NHL
Golf
Tennis
Soccer
UFC
WWE

**Lifestyle**
Health
Food & Drink
Auto
Travel & Outdoors
Real Estate
House & Home
Fitness & Well-being
Style & Beauty
Family
Faith

**Deals**

**FOX Business**
Personal Finance
Economy
Markets
Watchlist
Lifestyle
Real Estate
Tech

**Science & Tech**
Air & Space
Security
Innovation
Video Games
Military Tech
Planet Earth
Wild Nature

**Games**
Daily Crossword Puzzle
Crazy Crystals Match 3 Game
Word Search
Mini Crossword Puzzle
Stack and Match Block Puzzle
5 Across the Letter Word Game

**Watch Live**
FOX News Shows
Programming Schedule
On Air Personalities
Full Episodes
Show Clips
News Clips

**About**
Contact Us
Careers
Fox Around the World
Advertise With Us
Media Relations
Corporate Information
Compliance

**Apps & Products**
FOX News Go
FOX Weather
FOX Nation
FOX Noticias
FOX News Shop
FOX News Radio
Outkick
Newsletters
Podcasts

Updated Terms of Use | New Privacy Policy | Your Privacy Choices | Closed Caption Policy | Help | Contact Us | Accessibility Statement

This material may not be published, broadcast, rewritten, or redistributed. ©2025 FOX News Network, LLC. All rights reserved. Quotes displayed in real-time or delayed by at least 15 minutes. Market data provided by Factset. Powered and implemented by FactSet Digital Solutions. Legal Statement. Mutual Fund and ETF data provided by Refinitiv Lipper.

# EXHIBIT 29

*FOX NEWS DOCTORED MUGSHOT & INFRINGING VIDEO BROADCAST STILL FRAME*


FNCHD_America%27s%20Newsroom_2021-01-1
LIVE
U.S. ATTORNEY'S OFFICE
DISTRICT OF COLUMBIA
MIKE HUCKABEE (R) | FORMER ARKANSAS GOVERNOR
FBI TRACKING DOWN CAPITOL RIOT SUSPECTS
THE FBI HAS IDENTIFIED OVER 200 SUSPECTS FROM LAST WEEK'S RIOT
FOX NEWS
10:42 ET
AMERICA'S NEWSROOM
WEEKDAYS
9AM-11AM ET

# EXHIBIT 35

*FOX NATION PATRIOT PURGE EPISODE 3 SPEAKER'S LOBBY PAYWALL VIDEO CAPTURE*




Tucker Carlson Originals: Patriot Purge - Patriot Purge: Part 3

Season 1 · Episode 3 · Aired Nov 3, 2021 · 20m

Watch 3 Days Free

Already a subscriber? Sign-In

Political prisoners of the 'War on Terror' face abuse and pretrial detention. Ashli Babbitt is the first confirmed kill of 2.0., Part 3 of 3: Meet the political prisoners of the new 'War on Terror'. The accused of 1/6 have endured abuse and months of pretrial detention. And now 'War on Terror' 2.0 has its first confirmed kill: slain protestor Ashli Babbitt.

# EXHIBIT 36

*FOX NEWS OFFICIAL VERIFIED X ACCOUNT LANDING PAGE & AUDIENCE REACH*

X

- Home
- Explore
- Notifications
- Chat
- Grok
- History
- Creator Studio
- Premium
- Profile
- More

Post

Jayden X
@nojaydenx

Fox News
Post reposts




LIVE

Follow

**Fox News**
@FoxNews

Stay Ahead. Get Breaking News Here First. Download the App.

Media & News Company  U.S.A.  foxnews.onelink.me/xLDS/z2jymmyl
Joined March 2007

289 Following  29.4M Followers

Followed by أحداث الشرق الأوسط, Dixie, and 186 others you follow

**@nojaydenx, you aren't verified yet**
Get Verified like **@FoxNews** to stand out and get boosted reach.
Get Verified

Posts | Replies | Reposts | Media

**Fox News** @FoxNews · 24m
A guillotine in the back of a pickup truck... just steps from the U.S. Capitol.

Capitol Police arrested 35-year-old Philan-Tam-Duy Le after officers spotted the massive device standing upright in his illegally parked truck near the Supreme Court.

Officials say Le drove all the
Show more



Search

## Live on X

**Reuters** is hosting
Lindsay Clancy murder trial nears closing arguments +28.6K

**Al Jazeera English** is hosting
LIVE: AL JAZEERA NEWS +733

**i24NEWS English** is hosting
i24NEWS LIVE BROADCAST +521

**KelownaNow** is hosting
Canadian politicians tossing uncertainty bombs +40

**Governor Gavin Newsom** is hosting
Governor Newsom announces new investments to create jobs ... +4

## You might like

World News Toni... @ABCWorldNews Follow
Kevin McCarthy @SpeakerMcCarthy Follow
CNBC @CNBC Follow

Show more

## What's happening

Starlink
Fast Affordable Internet
Promoted by Starlink

Trending in United States
Tim Curry

# E X H I B I T 3 7

*FOX NEWS MICHAEL RUIZ DEFAMATORY ARTICLE & WATERMARKED FOOTAGE REPRODUCTION*

CAPITOL PROTESTS

# Left-wing activist charged in Capitol riot after saying he was just there to 'document'

John Sullivan told Fox News last week he regularly attends and takes video at protests

By Michael Ruiz · Fox News

Published January 14, 2021 7:11pm EST | Updated January 15, 2021 2:13am EST

**Fox News Flash top headlines for January 14**

Fox News Flash top headlines are here. Check out what's clicking on Foxnews.com.

A left-wing activist who told Fox News last week that he'd followed a pro-Trump mob into the Capitol in order to "document" the siege is now the subject of a criminal complaint in connection with his alleged participation, according to the U.S. Justice Department.

John Sullivan can allegedly be heard egging on protesters in video he provided to the FBI, according to a federal criminal complaint. He has also shared the video to his YouTube and Twitter accounts under the pseudonym Jayden X.

BLM ACTIVIST INSIDE CAPITOL CLAIMS HE WAS 'DOCUMENTING' RIOTS, ONCE SAID 'BURN IT ALL DOWN'

He was charged Thursday in federal court in Washington after being arrested by the FBI. He remains in custody in Tooele County, in his home state of Utah, on a U.S. Marshals Service hold request.

James Sullivan, the man's brother, told Fox 13 News that he gave tips about his brother to the Salt Lake City FBI. James Sullivan said he found out that his brother was at the Capitol when friends posted pictures online.

The FBI's Salt Lake City office did not immediately respond to an email from Fox News seeking comment.



(Tooele County Sheriff's Office)

BLM ACTIVIST INSIDE CAPITOL CLAIMS HE WAS 'DOCUMENTING' RIOTS, ONCE SAID 'BURN IT ALL DOWN'

Inside the building, he told rioters that "We got to get this s--- burned," and "it's our house m------------," according to an affidavit signed by FBI Special Agent Matthew Foulger.

He faces federal charges of civil disorder, entering a restricted building and violent entry or disorderly conduct.

Sullivan also allegedly told Foulger that he had been in the Capitol during the riot, entering through a broken window while wearing a ballistic vest.

As protesters climbed over a wall near the Capitol entrance, he allegedly exclaimed in the video, "You guys are f------ savage. Let's go!"

"There are so many people," Sullivan's voice can be heard saying as the camera shows a large group of people making its way toward the building. "Let's go. This s--- is ours! F-- yeah. I can't believe this is reality."

"We accomplished this s---," he said at another point "We did this together. F--- yeah! We are all a part of this history."




Inside the building, Sullivan told rioters that "We gotta get this s--- burned," and "it's our house m------------," according to an affidavit signed by FBI Special Agent Matthew Foulger. (FBI)

In an interview with Rolling Stone published Wednesday, Sullivan said he was putting on an act to build rapport with the protesters.

"I had to relate to these people, and build trust in the short amount of time I had there to get where I need to go," he told the magazine. "To the front of the crowd to see the dynamic between the police and the protesters, because nobody wants to see the backs of people's heads from a far-off distance."

He apparently made it there. During the unrest, he tweeted up-close video of the moment a Capitol Police officer fatally shot Air Force veteran Ashli Babbitt during the riot. It had been taken just a few feet away, at the height of the chaos outside the Speaker's Lobby.



A screengrab from Sullivan's video outside the Capitol (FBI)

Investigators used this detail and other aspects of the video to confirm Sullivan's alleged whereabouts within the Capitol, they said.

Sullivan, the founder of a Utah-based group called Insurgence USA, told Fox News last Thursday that he'd entered the besieged Capitol to "document" what was going on and to dispute "this narrative going around" that Antifa instigators had played a role in the riot.

CLICK HERE TO GET THE FOX NEWS APP

While he has denied ties to Antifa, or anti-fascists, in recent interviews, his group Insurgence USA had advertised an event called "Kick These Fascists out of DC" on Wednesday around the same time as a pro-Trump rally near the National Mall that preceded the Capitol chaos.




Another screengrab showing protective equipment (FBI)

After the Trump rally, a mob of demonstrators breached the Capitol, ransacked congressional offices, and stormed the Senate floor, prompting a chorus of condemnations from members of both major parties. The breach interrupted a joint session of Congress aimed at validating Joe Biden as president-elect. Congress reconvened later in the evening and finished the process.

Sullivan, who was still in custody Thursday, could not be reached for comment.

*Fox News' Edmund DeMarche and Sam Dorman contributed to this report.*

Sponsored Stories You May Like

Men Over 40 Are Ditching the Blue Pill for This 7x Stronger Alternative! — Health Journal

I'm 62, $1.5M: Can I Spend $9,000/Month Without Running Out? — Finance Advisors

The Honest Verdict: Can This $49 Nozzle Really Replace Power Washers — InquiryPost

Related Topics

Capitol Protests · Antifa · Washington DC · US protests · POLITICS

0 Comments

No comments yet

Be the first to start the conversation

# EXHIBIT 43

*FOX NATION PATRIOT PURGE EPISODE 1 TERRACE WATERMARK VIDEO FRAME*

patriot_purge_part_1_master.mp4



# EXHIBIT 44

*FOX NATION PATRIOT PURGE SERIES COMMERCIAL STREAMING LANDING PAGE*

Home Browse Collections
Get Started
Sign In




## Tucker Carlson Originals: Patriot Purge Clips




**Streaming Now: Patriot Purge: Part 1**

Part 1 of 3: The domestic war on terror is here. Tucker explores how the Biden regime is using the Capitol ri...

## Tucker Carlson Originals: Patriot Purge - Tucker Carlson Originals: Patriot Purge Episodes (3)



**Patriot Purge: Part 3**

Part 3 of 3: Meet the political prisoners of the new 'War on Terror'. The accused of 1/6 have endured ab...



**Patriot Purge: Part 2**

Part 2 of 3: The Biden regime has launched one of the largest manhunts in history. Tucker and his team talk...



**Patriot Purge: Part 1**

Part 1 of 3: The domestic war on terror is here. Tucker explores how the Biden regime is using the Capitol ri...

Fox Nation > Shows > Tucker Carlson Originals: Patriot Purge > Streaming Now: Patriot Purge: Part 1

## Fox Nation Social

facebook.com/foxnation @foxnation @foxnation youtube.com/foxnation tiktok.com/@foxnation

## Fox Nation Links

Support and FAQs
Watch Fox Nation on My TV
Fox Business
Fox News Radio
Redeem Gift Card
Closed Captioning Policy
Fox News
Fox News Shop
Sitemap

Trademark & Copyright Notice: ™ and © 2026 FOX News Network, LLC. All rights reserved. Use of this Website (including any and all parts and components) constitutes your acceptance of these **Updated Terms of Use** and **Updated Privacy Policy**.
**Your Privacy Choices**

## Join Fox Nation Now!

Fox Nation brings you original shows, documentaries and movies that celebrate America. Our stories, our values, our people – every day!

Get Started